## JOHNSTON & CO. *vs.* DUTTON'S ADM'R.

[ACTION AGAINST PARTNERSHIP ON PROMISSORY NOTE.]

1. *Liability of partnership on note given, with concurrence of majority of partners, for necessary supplies, ordered by one partner, for persons engaged in its business.*—Where three persons are engaged in carrying on a steam saw-mill in copartnership for a specified term, and during its continuance the note of the firm is given, with the concurrence of two of the partners, for necessary supplies, ordered by one of them, for the hands engaged in carrying on the business, the partnership is bound by it.

2. *Effect of notice by one copartner that he will not be bound for any future debt contracted on account of partnership.*—If a firm consists of but two partners, each having an equal voice in the direction and control of the common business, either may protect himself against liability on a future contract, by giving notice of his dissent to the person with whom it is about to be made; and where the partnership consists of more than two persons, one of whom gives notice of his dissent, the party contracting with the others acts at his peril, and cannot hold the dissenting partner liable, unless his liability results from the articles, or from the nature of the partnership.

3. *Majority shall rule, in the absence of express stipulations.*—When a partnership consists of more than two persons, there is an implied understanding, in the absence of express stipulations to the contrary in the articles of partnership, that the acts of the majority, as to all matters within the scope of the common business, shall bind the firm; and if one partner, in such case, gives notice of his dissent before the creation of the contract, he is nevertheless bound by the act of the other partners, and there is no necessity that he should be consulted by them in the matter.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THIS action was brought by Charles W. Dorrance, as administrator of William Dutton, deceased, against William Johnston and Samuel Fogg, partners under the firm name of Wm. Johnston & Co., to recover the amount of two promissory notes; one for $157 32, dated January 8, 1853, and due on that day, and the other for $149 47, dated December 17, 1852, and due on that day.

The defendant William Johnston filed a special plea of *non est factum*, verified by affidavit, averring that "the notes upon which this action is founded were not executed by him,

or by any one authorized to bind him in the premises"; and, in addition to this, the following pleas:—

"1, That said notes are without consideration, made or had to or by said firm of Wm. Johnston & Co.

"2. That said notes were given by the said Samuel Fogg, in the firm name of Wm. Johnston & Co., for the private debt of him, the said Fogg, and that this was known to plaintiff's intestate.

"3. That the said copartnership of Wm. Johnston & Co., at the time of the date of said notes, was dissolved, and that a suit was then pending in the Chancery Court of Mobile county for a settlement of the accounts of the said copartnership, which was known to plaintiff's intestate.

"4. That plaintiff's intestate, long before the date of said promissory notes, had notice that said Wm. Johnston would not be responsible for any future debts made on account of said mill, in which said Fogg was a partner, either by the firm, or by any member thereof.

"5. That said notes were given by said Fogg to defraud this defendant, the firm name having been signed thereto by said Fogg; and that it was well known to plaintiff's intestate, that neither this defendant, nor said firm of Wm. Johnston & Co., had received any consideration therefor.

"6. That said supposed copartnership of Wm. Johnston & Co. never had any legal existence, nor was there any such copartnership between the parties named in plaintiff's complaint, at any time before or since the making of said promissory notes."

On the trial, the plaintiff offered in evidence the notes described in the complaint, and proved that they were drawn and signed by Samuel Fogg; and also the articles of copartnership between said defendants and one Vanderslice, for the running of a steam saw-mill for the term of five years. "When the articles of copartnership were introduced by plaintiff," as the bill of exceptions states, "they were objected to as evidence by the defendant Johnston, but were admitted by the court, having been first properly proved as to execution and delivery; to which said defendant excepted."

"Plaintiff also introduced a witness, who testified, that these notes were given by Fogg in settlement of an account

which Dutton had for money advanced, and mostly for provisions and groceries ordered by Dutton of one Hampshire, at the request of Fogg, for the firm of Wm. Johnston & Co.; that Vanderslice was present when the notes were signed. There was no distinct proof how the money advanced by Dutton to Fogg had been expended, but there was evidence tending to show that defendants were partners in running a mill, and that they employed a great many hands; nor did the witness know that the articles came to the use of the firm, though he knew that they were sent off in a cart, drawn by a mule, which was used about defendant's mill; that the goods left town in the direction of the mill, and that Fogg said they were for the mill, (to which the defendant excepted;) that the said mill was under the management of Fogg and Vanderslice, who lived at the mill; that though Johnston was occasionally at the mill, he did not reside in Mobile, but in Dallas county; and that all these supplies were furnished before August, 1852.

"Defendant introduced evidence tending to show that, on the 23d June, 1852, he had given notice, by advertisement in the '*Tribune*', a newspaper published in Mobile, that he would not be responsible for any future debts made on account of said mill, either by the firm, or by any member thereof; that Dutton was a regular subscriber of the paper, at, before, and after the publication of the notice. He also gave evidence tending to show personal notice given to Dutton, about September, 1852, that Johnston would no longer be bound by or for any future contracts, made by Fogg without the knowledge and consent of Johnston; that on the 10th September, 1852, Dutton disclaimed having any demand against the firm, except an open account of some $50 or $60 advanced to or for Fogg, but said that he did not care for such notice—that Fogg was a partner with Johnston, and that he would stand by him and let him have what money (or what) he wanted. Defendant further gave evidence tending to show that he, by his agent, had liberally supplied the hands at the mill with all the groceries and provisions they wanted, or needed, and with everything that was necessary for the business of the mill; and that since the 12th August, 1852, he had been in possession of the mill himself, and run it himself, and that

Fogg had had nothing to do with it. The witness, however, who gave this evidence, testified, that he knew nothing of milling, nor of the size of the mill; that he could not, at the moment of examination, state the number of hands employed at the mill, nor what was necessary for them, but if he had his books in court, he could do it, as he paid them off every week; that he had employed hands himself, and knew what was necessary to support them; that the supplies were furnished by him, as Johnston's agent, on the orders of Fogg and Vanderslice, and that he paid the bills which Fogg and Vanderslice contracted, which orders witness had been directed by Johnston to fill and pay for, and which were profuse and extravagant; that Johnston lived in Dallas county, and was not in possession of the mill until August, 1852. There was evidence, also, tending to show that Fogg and Vanderslice had run the defendant Johnston to extravagant expenditures about the erection and management of said mill."

The defendant Johnston requested the following charges:

"1. That unless it has been shown to the jury that the copartnership between Fogg, Johnston, and Vanderslice was such as to authorize either one of them to buy groceries on the credit of all the partners, then neither Fogg nor Vanderslice had any such authority.

"2. That unless Fogg was authorized to make notes in the firm name, Johnston is not bound.

"3. That the authority might be shown by the course of dealing of the partnership, if recognized by all the parties; but if not, then it must be shown by the articles of copartnership.

"4. That the articles of copartnership do not show any such authority.

"5. That even if such authority ever existed, the notice given by Johnston through the papers, if brought to the notice of Dutton, would be from that time a revocation on the part of Johnston of any such authority to bind him.

"6. That if it would not, of itself, revoke the authority, the notice so given, and brought home to Dutton, would be sufficient to put him on inquiry as to the authority of the other partners.

"7. If the jury presume, merely from previous dealings of

the parties, an authority in Fogg to bind the firm, that then this presumption would be destroyed by the notice given, if brought to the knowledge of Dutton.

"8. That unless the jury believe that the notes sued on were made by a person who, at the time they were made, was authorized to bind Johnston, then Johnston is not bound by them.

"9. That if Johnston is not bound by the notes sued on, the jury must find for the defendant.

"10. That the word 'means' does not mean credit.

"11. That if the jury believe the goods were furnished by Hampshire, upon an order from Dutton, then Dutton, and not Hampshire, furnished the goods to Fogg, and therefore Dutton, and not Hampshire, would be Fogg's creditor for the amount."

The court gave the third, sixth, seventh, eighth, and ninth of these charges, as asked, and refused to give the others; and to each refusal the defendant excepted.

"Previous to the request to give these charges, the court had charged the jury, at length and in full, upon the law of partnership, the effect of notice, and the legal effect of the articles in this case; and during the summing up, after calling their attention to the fact that they must be satisfied that Fogg was authorized to sign the partnership name by the defendant, before the plaintiff could recover, the court charged the jury, that even if no written articles of partnership existed, yet, if by the usual course of dealing Dutton was authorized to infer that the parties were in partnership, this would be sufficient to justify him in treating the defendant as a partner; and that if the intercourse and dealing between Fogg and Johnston was such as to authorize Dutton to look upon them as partners, then Johnston would be bound by the contract made by Fogg as to partnership matters; to which charge the defendant excepted."

The admission of the evidence objected to, the charge given, and the refusals to charge as requested, are assigned for error.

P. HAMILTON and F. S. BLOUNT, for appellants:

The case made by the record is, an attempt to enforce against a partnership a demand created by advances made to

one partner, by a third person apparently acquainted with the
nature of the connection.   The note was made without John-
ston's knowledge, and in defiance of his notice; a part of the
claim was for money advanced to Fogg, and the remainder
was for provisions, which are not shown to have been used
about the business of the firm, and which most likely went to the
private use of Fogg and Vanderslice.   No necessity is shown
for these supplies; and the purchase of them is not shown to
have been within the usual course of the business of the firm.
The notes were made after the notice by Johnston had been
publicly given, and after Dutton had been personally in-
formed of it; and, further, after he had disclaimed having
any such demand, when he was evidently determined to main-
tain Fogg in his disputes with Johnston.   Under this proof,
the fifth charge asked should have been given.—1 Stark. 164;
1 Camp. 403; 1 Y. & Jerv. 227; 3 Conn. 124.   Even if the
goods had been proved to have come to the possession of the
firm, still Johnston's notice to Dutton discharged him from
the liability which he had directly refused to assume.—5 Watts
& Serg. 564; 10 East's R. 264; 3 Conn. 124.

This principle of protection by notice from future liability
does not depend on the idea that it works a dissolution of the
partnership: it is the means which one partner retains of
protecting himself against injury from the implied power of
another partner; for the latter is only an implied power, and
can be revoked by express dissent.—American Leading Cases,
vol. 1, p. 292, and authorities last above cited.

Johnston had the right to dissolve the concern at his pleas-
ure; if by so doing he wrought injury to Fogg, the remedy
was by suit on his bond, and a creditor of either has nothing
to do with the question.—17 Johns. 525; 19 ib. 538; 1 Conn.
60; 3 Bland's R. 674.


Robt. H. Smith, *contra:*

There are two cases to the effect that one partner may,
without dissolving the firm, restrict the power of his partner
to bind the firm, when there are but two partners, by giving
notice that he will not be bound; but both these (1 Camp.
N. P. 403; 1 Stark. N. P. 164) are cases at *nisi prius*, and
both were before the same judge (Ellenborough), though

the first was affirmed in the King's Bench. No similar decision can be found in England, and no authorities are cited to maintain them; and the only American case is, Leavitt v. Peck, 3 Conn. 124. These cases are cited and approved by Kent (Com., vol. 3, p. 44); but no notice of them is to be found in Story, and no such principle is announced by him. According to the case in 1 Stark. 164, the rule applies, unless the goods bought came to the use of the firm, or the purchase was assented to; while the case in 3 Conn. 124 shows that this matter must be left to the jury, and that it would have been error in the court to pronounce the purchase not binding. And if the subject-matter of the contract was consistent with the partnership business, the appellant would be bound to show that it was out of the usual partnership dealings.—3 Kent's Com. p. 43; 11 Johns. 544. The clearest exposition of the law, relative to the power of one partner to bind the firm notwithstanding the dissent of another, is found in Parsons on Contracts, vol. 1, p. 156, and cases there cited in note.

GOLDTHWAITE, J.—The evidence in this case tended to show that appellants and one Vanderslice carried on in copartnership a steam saw-mill, which, by the articles of copartnership, was to continue at least five years; that the note sued on was given with the concurrence of two of the partners, Fogg and Vanderslice, for supplies necessary for the hands engaged in carrying on the mill, which had been ordered by one of them. Upon these facts alone, there can be no doubt that the firm would be bound. The furnishing of the supplies to those engaged in the immediate direction of the business, was essential to the conducting of it, and within the scope of the purposes for which the individuals had associated; and the authority of either of the partners to purchase such supplies, and give the note of the firm, cannot be questioned.

The principal ground of objection, however, is, that the evidence proved that, before the goods were furnished and the note given, the appellant, Johnston, gave notice to the public that he would not be responsible for any future debt contracted on account of the copartnership, and that this notice was brought home to the party with whom the debt

was contracted; and it is insisted that its effect was, to revoke the authority of the other partners, so far as he was concerned, to bind the firm from that time.

It is to be observed, that in the present case the contract was concurred in by two members of the firm; and the question, therefore, is, as to the right of the majority to bind the other partners, against their dissent, as to matters appertaining to the common business, and in the absence of any stipulation conferring that power in the articles of copartnership. This question is a new one in this court, and indeed we have found no case in which it has been expressly decided. Both in England and the United States, there are cases which assert the general proposition, that a partner may protect himself against the consequences of a future contract, by giving notice of his dissent to the party with whom it is about to be made.—Gallway v. Matthew & Smithson, 10 East, 264; Willis v. Dyson, 1 Stark. 164; Vice v. Fleming, 1 Y. & Jerv. 227–30; Leavitt v. Peck, 3 Conn. 125; Feigley v. Sponeberger, 5 W. & S. 564; Monroe v. Conner, 3 Shep. 178. And where the firm consists of but two persons, and there is nothing in the articles to prevent each from having an equal voice in the direction and control of the common business, the correctness of the proposition cannot be questioned. In such case, the duty of each partner would require him not to enter into any contract from which the other in good faith dissented; and if he did, it would be a violation of the obligations which were imposed by the nature of the partnership. It would not, in fact, be the contract of the firm; and the party with whom it was made, having notice, could not enforce it as such. So, if the firm was composed of more than two persons, and one of them dissented, the party with whom the contract is made acts at his peril, and cannot hold the dissenting partner liable, unless his liability results from the articles, or from the nature of the partnership contract. All the cases can be sustained on this principle; and it is in strict analogy with the civil law, which holds where the stipulations of the partnership expressly entrust the direction and control of the business to one of the partners, that the dissent of the other would not avail, if the contract was made in good faith (Pothier Traite du Com. de Soc., No. 71, 90); and such also,

we think, is the rule of the common law.—Const v. Harris, Turn. & Russ. 496; Story on Part. § 121. Were it otherwise, it would be denying to parties the right to make their own contracts. If our views as to the governing force of express stipulations are correct, the effect of such terms or conditions as result by clear implication from the articles, or arise out of the nature of the partnership, must be the same. It is as if they had been expressly provided.

Now, whenever a partnership is formed by more than two persons, we think that, in the absence of any express provision to the contrary, there is always an implied understanding that the acts of the majority are to prevail over those of the minority, as to all matters within the scope of the common business; and such we understand to be the doctrine asserted by Lord Eldon in Const v. Harris, *supra*, and such was the opinion of Judge Story.—Story on Part. § 123; 3 Kent's Com. (5 edit.) 45. The rule, as thus laid down, is certainly more reasonable and just, than to allow the minority to stop the operations of the concern, against the views of the majority. We do not say that it would be deemed a *bona fide* transaction, so as to bind the firm, if the majority choose wantonly to act without information to or consultation with the minority (Story on Part. § 123); but when, as in the present case, the one partner has given notice, and expressed his dissent in advance, there could be no reason or propriety in requiring him to be consulted by the other two.

We do not consider the cases to which we have been referred, holding that one partner has the right at pleasure to dissolve a partnership, although the articles provide that it is to continue for a specified term (Marquand v. New York Ins. Co., 17 Johns. 525; Skinner v. Dayton, 19 *ib*. 513, 538), as having any bearing on the case under consideration. Conceding they are law—which is doubtful (Story on Part. § 275, n. 3, and cases there cited)—the decisions rest solely upon the ground, that the limitation or the right of dissolution is incompatible with the nature of the copartnership contract; and this principle does not militate against the positions we have asserted. The dissent, in the present case, cannot be regarded as a dissolution; for, if effectual, it would not necessarily produce that result, although it might operate to change

the mode of conducting the business. In other words, it might be carried on without contracting debts.

Our conclusion is, that the act, being concurred in by two of the partners, was, under the circumstances, the act of the firm ; and that the charge, asserting the proposition that the dissent of one partner against the other two would necessarily exonerate him, was properly refused.

Judgment affirmed.

