(76 South. 903)

ALLISON v. KING et al. (6 Div. 578.)

(Supreme Court of Alabama. Nov. 29, 1917.)

PLEDGES ⬡═46—RIGHT TO RETAIN PLEDGES— PAYMENT OF SECURED DEBT.

A. to whom W. gave a note, with G. as surety, and collateral, and to whom G. gave a note with collateral, is not entitled to retain the collateral as against G. after payment of the notes by G. entitling him to surrender of the collateral given by him, and transfer of the collateral given by W. with subrogation to the rights of A. therein; though after the giving of such notes G. and W. became partners, and W. borrowed of A. on his individual note, G. refusing to sign and giving notice to A. that he would not be bound thereby.

Appeal from Circuit Court, Cullman County; James E. Horton, Jr., Judge.

Suit in equity by G. B. King against P. M. Allison and others. From an adverse decree, the named defendant appeals. Affirmed.

G. B. King, complainant in the court below, filed this bill against P. M. Allison, appellant, and W. L. King and J. S. King, seeking to be subrogated to the rights of said Allison in said collateral security placed with appellant by W. L. King, the son of G. B. King, and also to have delivered up and canceled to the complainant certain collateral placed with the appellant, the property of G. B. King, upon the theory that the debt for which the same had been placed as collateral had been fully paid. Respondents W. L. and J. S. King did not defend, and decrees pro confesso were entered against them. Respondent P. M. Allison insisted that G. B. King and W. L. King were partners in the business known as the Hanceville Drug Company, and that the money borrowed from appellant by W. L. and G. B. King was for partnership purposes, and that G. B. King was not a surety for his son, but was a principal, and not entitled to be subrogated to the collateral security, which was deposited with the respondent by both G. B. and W. L. King, as partners.

Appellant insists that there is yet some amount due him, and that he has a right to retain the collateral. Upon final hearing on pleas and proof, the chancellor reached the conclusion that G. B. King was surety for the debts of his son in the indebtedness for which the collateral notes were placed with the appellant, which debts had been fully paid, and that the said G. B. King was therefore entitled to the relief he sought. It was further found that the appellant had collected two of the notes known as the "Hawk notes" after the indebtedness for which they had been placed as collateral had been paid, and judgment was rendered against the appellant for $224.53, being the amount thus collected after the indebtedness had been paid. From this decree appellant prosecutes this appeal.

W. E. James, of Cullman, for appellant. A. A. Griffith, of Cullman, and Callahan & Harris, of Decatur, for appellees.

GARDNER, J. The evidence is in sharp conflict as to whether or not G. B. King, the complainant, and his son W. L. King, were partners in the business known as the Hanceville Drug Company, and this presents a very close question of fact. Much of the argument of counsel for appellant is addressed to this phase of the case. We have reached the conclusion that the decree of the court below is correct even should it be conceded that at the time of the execution of the last note for which appellant holds the collateral here involved, the complainant was in fact a member of the firm of the Hanceville Drug Company.

While there are some conflicts in the testimony, after a careful examination of the record, we are persuaded of the correctness of the following state of facts, a large part of which, of course, is without dispute. In May, 1910, W. L. King, son of G. B. King, complainant, borrowed from appellant, P. M. Allison, the sum of $890, executing his note for $1,000, G. B. King signing the same as surety. It can hardly be contended that there was any partnership at that time. The son W. L. King deposited with Allison as collateral several notes known as the Woodruff notes, which were subsequently, by agreement of parties, exchanged for the Hawk notes, which are here in controversy. Subsequently G. B. King borrowed from Allison $600, and executed his note in the sum of $666. We are

persuaded that this money was borrowed by said G. B. King for the use of his son W. L. King in the purchase of a lot, title to which was made to the son. This note was signed also by W. L. and J. S. King, the latter also a son of G. B. King. We are of the opinion that at this time G. B. King placed with Allison as collateral some notes executed by one Shinn. Shinn had purchased some property from G. B. King, executing his note for the purchase price, and subsequently J. S. King had purchased the same property from Shinn, executing his note therefor, and the Shinn notes were surrendered, and that therefore the J. S. King notes were substituted as collateral security for the Shinn notes, and were held by Allison as collateral on the above indebtedness.

Up to this time, we think it clear that no partnership existed, and no partnership transactions were involved. Subsequently, G. B. King borrowed $700 additional. At that time much of the former indebtedness had been paid, and Allison combined the entire matter in one note and mortgage in the sum of $1,974.47, and accepted in addition to the mortgage on certain real estate, as well as personalty, the collateral still in his hands heretofore referred to as the Hawk notes, and the J. S. King notes. This note and mortgage were executed by W. L. King and G. B. King, in November, 1911.

It is without dispute that this entire indebtedness has been fully paid and discharged, and the notes and mortgages surrendered to G. B. King, but Allison declines to surrender the collateral referred to as the Hawk notes and the J. S. King notes. In the fall of 1912, W. L. King borrowed from Allison the sum of $350, and the latter insists that the complainant G. B. King agreed that the collateral of the Hawk notes and the J. S. King notes held by Allison should be retained by him as collateral for the $350 loaned to W. L. King. We are persuaded to the contrary. The note was executed by W. L. King alone. G. B. King was sent for to ascertain if he would sign the same with his son to secure this loan. This he declined to do, and we are convinced from this record that he not only declined to sign the note, but expressly warned the appellant that he would not be bound in any manner for this additional $350.

The indebtedness for which the collateral of the Hawk and J. S. King notes were placed was paid in large part, and indeed almost entirely, by G. B. King. The Hawk notes were the property of W. L. King, and were placed as collateral with the note of $1,000 executed by said W. L. King, and for which G. B. King was surety. This indebtedness having been paid by G. B. King, he was entitled to the transfer of this collateral, and to be subrogated to the rights of Allison therein. Section 5385, Code 1907. The J. S. King notes were the property of G. B. King, and, as the debt for which they were placed as collateral had been fully paid, he was entitled to have them surrendered.

It is insisted by appellant, however, that at the time of the execution of the note for $350, in 1912, by W. L. King, G. B. King was a partner with his son W. L. King in the business known as the Hanceville Drug Company, and that this money was used to pay a debt of said firm, and that therefore he was entitled to hold the collateral as security therefor. As previously stated, however, we are convinced from this evidence that the loan was made to W. L. King on his own account. It was secured by a mortgage on a piano, the property of W. L. King. It was not signed by the Hanceville Drug Company, but by W. L. King alone. G. B. King expressly declined to sign the same, and gave notice to Allison that he would not be bound thereby. Clearly, under these facts as thus established to our satisfaction, Allison was without authority in further retaining these collateral notes. Bradley Fert. Co. v. Pollock & Co., 104 Ala. 402, 16 South. 138; Johnston v. Dutton, 27 Ala. 252; Dawson, Blackemore & Co. v. Elrod, 105 Ky. 624, 49 S. W. 465, 88 Am. St. Rep. 321; North. Penn. Coal Company's Appeal, 45 Pa. 181, 84 Am. Dec. 487; 30 Cyc. 485, 486.

The decree appealed from will accordingly be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.