# W. H. STEGALL v. CONEY & RICE.

1. PARTNERSHIP—POWER OF ONE PARTNER.—Each partner of a mercantile firm has authority to sell the goods. He may sell the major part or the entire stock *in solido*, but such a transaction, being rather unusual, may excite suspicion, and would bind or not the other partners and creditors, as the act may be *bona fide*, and fair or otherwise. So one partner may make an assignment of personal assets for the benefit of creditors. Anderson v. Tompkins, 1 Brock, 457. Each partner has the power to do, within the scope of the business, in their dealings with others, what all unitedly might do.

2. SAME—SAME.—If a single partner appropriates the goods or credits of the firm to the payment of his individual debt, this is such a use of them as is destructive of the joint business, and would not be binding on the other partners ; nor would a right thereby be conferred upon the purchaser or assignee ; for either would be cognizant of the unlawful conversion.

3. SAME.—EFFECT OF TRANSFER BY ACTIVE PARTNER.—If an active partner dealt with the joint assets, so as to put them beyond the reach of the other partners, and deprive them of all profit and benefit thereof, and was assisted in the fraudulent scheme by another, such confederate, to the extent that the property and effects could be traced to him, would be held as trustee.

4. SAME.—AUTHORITY OF A PARTNER.—HOW LIMITED.—The authority of a partner is limited to things done in the regular course of the business of the firm ; outside of this he has no authority. Parsons on Part., p, 163. If he attempts to mortgage or assign under suspicious circumstances, such act would be of no effect as against the parties injured thereby. A transfer by a partner of the joint effects in fraud of a co-partner will constitute the transferree who received them with notice, or without consideration, a trustee for the benefit of the firm or its creditors. If the joint funds were employed by one partner to purchase property, either in his own name, or that of another, with the intent to defraud his co-partners, or the creditors of the firm, the property so purchased will be treated as trust funds for the firm and its creditors. Croughton *et al.* v. Forrest *et al.*, 17 Mo. R., 140.

Appeal from the chancery court of Monroe county. Hon. O. H. WHITFIELD, Chancellor.

The opinion of the court contains a correct statement of the case.

*Houston & Reynolds*, for appellants :

Contended that as to Stegall, the averments of the bill are not sustained by proof.

1. It is no ground for relief, in equity, that he sold the goods of the store on credit and not for cash. The remedy, if any there be, for a violation of the partnership articles in this respect, is in a court of law.

2. If the credit charged was wrongfully entered, Stegall is not chargeable with it. He had in fact, in good faith, paid $2.000.00 on his account, and the court recognized its payment, and it was no injury to the firm to give him credit for the sum. A fraud without injury is without remedy either at law or in equity. If the credit was entered by Gaines, with the consent of Stegall, or if the latter combined with any one else to have it entered, or entered it himself, a court of equity would have no jurisdiction to decree the payment of the true amount due the partnership. Minor v. Gaw, 11 S. & M., 322; Buck v. Mosley, 24 Miss., 171; Rogers v. Batchelor, 12 Pet., 221.

3. The appellant cannot be charged with the deficit caused by Gaines' mismanagement or fraud unless he participated.

4. Neither is he chargeable with Gaines' ignorance of the business, or his rascality in conducting it.

5. Independent of any agreement, Stegall had the right to the control and possession of the stock of goods. The seizure of property under attachment, and the giving of a forthcoming bond, does not remove the lien of the attachment. The surety in the bond may exonerate by delivering the attached property to the officer making the levy, at any time before judgment is rendered on the bond. Drake on Attachments, 335; Hansford v. Perrin, 6 B. Mon., 595; Montague v. Gaddis, 37 Miss., 453. The object of the forthcoming bond is to substitute the custody of the party in possession under proper security for that of the officer making the bond. Trotter v. White, 26 Miss., 93.

6. But if Stegall was in wrongful possession, then the remedy to recover the goods was not in equity, but in a court of law, by an action of replevin, detinue or trover. Baldwin v. McKay, 41 Miss., 398; Burrey v. Turney, Walk., 498.

II. If Stegall was a debtor to the firm, or had wrongfully converted the stock of goods to his own use, a court of equity has no jurisdiction to grant relief; the remedy at law

is full, adequate and complete. Minor v. Gaw, 11 S. & M., 322; Buck v. Moseley, 24 Miss., 171; Dot v. Halsey, 16 Johns., 34; Rogers v. Batchelor, 12 Pet., 221; Brinster v. Mott., 4 Scan., 378; Purdy v. Powers, 6 Barr, 492. Even if Stegall colluded with Gaines to defraud the firm of the stock of goods, a suit at law may be maintained by the other partners. Longman v. Pole, Moody & M., 223; Metropolitan Saloon Omnibus Company v. Hawkins, 4 Hurlst. & N., 87, 92. And equity has no jurisdiction whatever where there is a remedy at law. 30 Miss., 179; 40 ib., 119.

III. The bankruptcy of Coney and Rice vested their interest in the partnership in the non-bankrupt partner, Gaines, and upon a sale of Coney's interest to Rice, and Rice's purchase of the interest of himself and the previously transferred interest of Coney, at the sale by Rice's assignee in bankruptcy, vested in Rice only what remained after the payment of partnership debts. Bankruptcy acts upon a partnership in many respects like death. If it be the bankruptcy of the firm, it is like the death of all the partners; if the bankruptcy of one partner, it is like his death. Parsons on Partnership, 471; 7 East, 53; Borston v. Adams, 2 Day, 70; Cohen v. Gibbs, 6 Binney, 189; Shirley v. Long, 6 Rand., 735; Bowles v. Horn, 17 How., 159; *ex parte* Williams, 11 Vesey. On the death of a partner, the partnership property vests, by operation of law, in the survivor. Scruggs v. Blair, 44 Miss., 412; Faler v. Jordan, ib., 290. See, also, Bank v. Carrollton R. R. Co., 11 Wall., 625; Taylor v. Fields, 4 Vesey Jr., 396; Nical v. Mumford, 4 Johns. Ch., 522; Doner v. Stanfer, 1 Penn., 198.

*Sale & Dowd*, for appellees:

1. The point made by appellants that the remedy of Coney and Rice is adequate and complete at law, by action for the wrongful conversion of the goods, was not made in the court below, on demurrer, and therefore cannot be sustained here. 12 S. & M., 293; 10 ib., 81; Walk., 431; Brown v. Bank of Miss., 31 Miss., 454; Doe v. Natchez Ins. Co., 8 S. & M., 197;

Commercial Bank v. Morton, 9 S. & M., 613 ; Grant v. Planters' Bank, 4 How., 326 ; Monk v. Horne, 38 Miss., 100.

2. At any rate, if it be established that Stegall had committed a trespass, or had wrongfully converted the property of Gaines, Coney & Rice, or had bought goods and failed to pay for them, and *there were no other facts* in the case, a court of equity would have no jurisdiction, and the remedy at law would be complete. But in this case there are " other circumstances" that destroy the jurisdiction of a court of law and fixes that of equity. The deed of conveyance from Gaines, Coney & Rice, to Stegall, is fraudulent, and it is sought to be annulled. A court of law certainly has no power to order it to be delivered up and canceled. One person cannot sue another belonging to the same firm, on account of firm dealings, in a court of law. Calvit v. Markham, 3 How. (Miss.), 343 ; Belknapp v. Gibbons, 13 Metc., 471 ; Eastman v. Wright, 6 Pick., 320, 321.

One partner has the power to sell the entire assets of the firm if done in good faith and for the uses and purposes of the partnership. But if he do so fraudulently, and without authority, his deed or contract will be set aside by a court of equity, and the grantee declared a trustee. Parsons on Partnership, 168–170 ; Law v. Ford, 2 Paige, 210 ; Winship v. Bank of United States, 5 Pet., 560–561 ; Whitton v. Hulbert, Freem., ch. 231. In such a case, a suit at law cannot be maintained. Jones v. Yates, 17 Eng. C. L. R., 436–438 ; Greeley v. Wyth, 16 N. H., 10 ; Daniel v. Daniel, 9 B. Mon., 195 ; Anderson v. Tompkins, 1 Brock, 457 ; 5 Johns., ch. 417, 428, 429 ; Halstead v. Sheppard, 23 Ala., 558, 573 ; Collyer on Partnership, § § 642, 643, 644. There is no limit to the jurisdiction of the courts of equity on the subject of fraud. I Story Eq. Jur., § 187 ; Mortlock v. Buller, 10 Vesey, 306. The leading principle of this remedial Justice is by way of equitable construction to convert the fraudulent holder of property into a trustee, and to compel him to account as such. Perry on Trusts, § § 169–172 ; 2 Story Eq. Jur., § §

1196, 1197; ib., § § 664–677.   The attachment for only $600, levied on property worth $10,000, is of itself evidence of fraud and conspiracy.   2 Story Eq. Jur., § § 1197–1199.

3. The title, possession and control of the partnership property, did not on account of the bankruptcy of Coney and Rice, vest in the non-bankrupt partner, Gaines.

The assignee and solvent partner are tenants in common, and the legal title to all the property of the firm, is vested in them jointly.   If the assignee has possession of the property of the firm, the solvent partner cannot sue for their possession.   Murray v. Murray, 5 Johns., ch. 70;   Hubbard v. Guilo, 1 Duer, 662;   Parsons on Partnership, 472, 473, 476;   Thompson v. Frera, 10 East., 418;   Tweed v. Elworthy, 14 ib., 211;   11 S. & M., 326;   24 Miss., 172.

SIMRALL, J., delivered the opinion of the court:

In November, 1865, Coney, Rice & Gaines, formed a partnership, to carry on the business of dry goods merchants, at Smithville, in this State.

Coney and Rice, were residents of the State of Alabama, at a place   about   130   miles   distant   from   Smithville. The business was to be under the management of Gaines, who was to furnish whatever additional assistance was needed, and also the store-house, at his own expense.   The profits to be equally divided between the three.

A stock of goods costing, at Cincinnati, between $10,000 and $11,000, were purchased, and received by Gaines at Smithville.

The bill charges that a combination and conspiracy was entered into by Gaines, Henry W. Stegall and Danbery, to swindle the complainants out of the goods and proceeds, which was almost or quite successfully accomplished.

. It would seem that it was understood that the goods should be sold for cash, or for cotton, and that the proceeds, so far as necessary, should be applied to pay for their purchase.

The complainants, one or both of them, in February, 1866, visited Smithville, for the purpose of looking into the condi-

tion of the business. Gaines was absent, but had left his affairs in charge of other persons. It is proved that the actual condition of the business was misrepresented to the complainants, and that pains were taken by putting out of the way the books, to prevent an examination into the condition of the business. In August, of the same year, the nonresident partners again visited Smithville, and on taking an inventory of stock, it was ascertained that about $4,100 worth of goods were on hand; about $75 of money was said by Gaines, to be in his possession, and there were bills receivable, amounting to between $1,400 and $1,500, most of which are reported by the receiver to be worthless. The goods had mostly been sold for cash. None of the debts of the firm had been paid, except $50 or $60.

It is manifest that Gaines grossly mismanaged the business. No explanation is given of what disposition was made of the goods, or their proceeds. But the fact remains that a stock of about $11,000 of goods, was reduced in six months, about two-thirds, leaving a residuum of stock of about $4,000, and no joint liabilities paid.

A large amount of cash must have been realized by Gaines. The evidence is ample to characterize his conduct towards his partners and creditors as fraudulent.

But he makes no complaint of the decree.

The question is, whether Henry W. Stegall combined and assisted Gaines in making a fraudulent disposition of the goods, or any part of them.

It was proved that when the complainants were about completing taking an inventory of stock, that W. H. Stegall came into the store-house, took possession of the keys, and ordered them, in a most peremptory manner, to leave the house. The testimony is not harmonious as to the pretenses set up for this conduct. Rice, in his deposition, says: That Stegall claimed the goods under a transfer made by Gaines in the name of the firm, he had in his hand a written obligation, the firm signature being exposed. Rice told Stegall that they would hold him responsible for the goods.

Stegall answered that he was responsible. It should be stated in this connection, that Gaines did not appear at the store on the afternoon of this day, but sent a note to the complainants that he was sick and wanted nothing more to do with the goods, but they must be moved, as Mr. Stegall wanted the house. During the same afternoon one of the complainants had been making enquiries of a suitable place where the goods might be placed. Stegall states that when the replevin bonds were signed by himself and brother, the verbal agreement with Gaines was that they were to hold possession of the goods, but Gaines was to go on and sell as usual. It is an undisputed fact in the case, that about this time Gaines, in the name of the firm, had executed a written transfer and assignment of all the assets to W. H. Stegall. The motive given by Gaines and Stegall was to protect the effects from other attachments. But it would not be extravagant to infer that the intent was to enable Gaines to make a disposition of the goods without accounting to his partners or creditors for their proceeds.

Since such a paper was in existence, the deduction is legitimate, that it was by virtue of the right which it conferred, that Stegall ejected the complainants from the house, and took possession of the goods. Stegall admits that he was to use this assignment to keep off creditors. There is satisfactory testimony that he did employ it to deprive the complainants of the goods. From the exchange of notes between Gaines and some person at Stegall's house, and his going there once or more in the forenoon of this day, it is plain, from after occurrences, that Stegall was advised of the exact posture of affairs, and that was, that Gaines would decline further interest or interference with the assets, that as Stegall wanted his store-house, the goods must be removed. Whilst arrangements were being made to do that, Stegall makes his claim and takes possession.

Within four or five days this suit was brought; four or five weeks afterward, the receiver applied to Stegall and Gaines for the goods, and neither of them knew anything

about them, or what had become of them. Nothing was left except a lot of remnants, estimated at about $170. Yet it is in proof that during those few weeks, whilst the front and back doors were both closed, a most active sale and removal of the stock was going on. There are many other circumstances, less prominent and important, not necessary to be detailed. In view of the testimony, the Chancellor held W. H. Stegall responsible for the value of the goods at the time he took possession of them, and also for whatever balance, on his account, might be found due the firm.

Is that conclusion sustained by the rules of law applicable to the case?

Each partner of a mercantile firm, like this, has authority to sell the goods. The scheme of the business is to buy and sell for a profit. The retail merchant sells generally by the yard, the pound, or the gallon. Yet there is no principle of law, which prohibits one member of the firm from selling by the piece or the package. Indeed he may be said to have the abstract right to sell the major part, or the entire stock *in solido*, but such a transaction being rather unusual, may excite suspicion, and would bind or not the other partners and creditors, as the act may be *bona fide* and fair, or otherwise. So one partner may make an assignment of personal assets for the benefit of creditors. Anderson v. Tompkins, 1 Brock. Rep., 457.

There is no controversy about the general principle. The doctrine rests on the nature and necessities of mercantile partnerships, and the character of the business. The base formation of such an association, communicates to each member power to do, within the scope of the business in their dealings with others, what all unitedly might do. It pertains to the right of each partner to sell, in parcels, joint property to pay a joint debt. So each may transfer notes or accounts for the same purpose; so either may create a valid lien on the assets for the benefit of joint creditors. These and such like acts are fairly in the line of the business, and devote the property to a legitimate purpose. But if a single

partner appropriate the goods or credits of the firm to the payment of his private and individual debts, this is such a use of them as is destructive of the joint business, and would not be binding on the other partners, nor would a right thereby be conferred upon the purchaser or assignee; for either would be cognizant of the unlawful conversion.

It would not need the support of authority to establish another proposition, that if the active partner dealt with the joint assets, so as to put them beyond the reach of the other partners, and deprive them of all profit and benefit thereof, and was aided and assisted in the fraudulent scheme by another, that such confederate, to the extent of his participation, would be responsible. To the extent that the property and effects could be traced to such confederate, to that degree would he be held as trustee.

The authority of a partner is limited to those things done in the regular course of the business of the firm; outside of this he has no authority. Parson on Part., 163. If he sells the whole or a part of the assets, with the intent to apply the proceeds to his own use, and thereby defraud his partners, if the purchaser from him has knowledge of such an intent, or the transaction was attended with such circumstances as would have imparted knowledge, but for his gross negligence, then the purchaser's title is affected and vitiated. Parson on Part., 164. If the attempt be to mortgage or assign, and that be done in an unusual way, or under suspicious circumstances, such an act would be of no effect, as against the parties injured thereby. Ib., and cases in notes.

A transfer by a partner, of the joint effects, in fraud of a copartner, will constitute the transferree, who received them with notice or without consideration, as trustee for the benefit of the firm or its creditors. If the joint funds were employed by one partner, to purchase property, either in his own name, or that of another, with the intent to cheat his copartners or the creditors of the firm, then the property so purchased will be treated as trust funds for the firm and its

creditors. Croughton *et al.* v. Forrest *et al.*, 17 Mo. Rep., 140 (and 2d Bennett Mo. Rep., 140).

The authorities have quite clearly established the principle, that it depends on the special circumstances of each case, whether an assignment of all the joint effects to *trustees*, for creditors, is valid or not. Such assignments have been sustained, where the other partners are absent from the country, or the assignor is sole managing partner, or if it may be legitimately inferred in any other way that such power has been conferred upon the assignor. Anderson v. Thompson, 1 Brock, 456; McCullock v. Sommerville, 8 Leigh, 433, 436; Robinson v. Crowder, 4 McCord, 519; Harrison v. Serry, 5 Cranch, 300.

It is plain that the transaction between Gaines and Stegall, is condemned by these principles. The assignment under which Stegall claims was not made to trustees, nor for the benefit of all the creditors of the firm. Indeed, the avowed purpose was to enable Gaines to consummate a fraud upon the creditors and his partners.

The conduct of Stegall doubtless deprived the complainants of goods to the amount of $4,100.00, or thereabouts, and ought to impose upon him the duties and responsibilities of a trustee. If, after taking possession of the house and merchandise, he permitted Gaines or others to dispose of them, that ought not to relieve him of accountability.

We affirm the decree.