## Hartley *versus* White.

1. Where a partner, for the purpose of paying his individual debts, sells firm property without the knowledge of his co-partners and with the intent to defraud firm creditors, the purchaser acquires no title as against said creditors.

2. A judgment was entered in such a form as to contain a reference to an Act of Assembly and to a case in the Law Reports. *Held,* that such an error was not fatal, and that it could be amended by striking out the references.

March 15th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas of *Susquehanna county:* Of July Term 1878, No. 43.

Attachment-execution by Norman White and D. K. Morss, assignee of said Norman White, against M. J. Decker and Andrew Halstead, defendants, and Silas Hartley, garnishee. Service was had on Halstead, one of defendants, and Hartley. A rule was taken on the garnishee to take interrogatories, who filed answers and the same day pleaded " *nulla bona.*"

At the trial, it appeared that in 1870 Decker & Halstead were in partnership in the mill and lumbering business, and about that time borrowed $2000 from White for the use of the partnership. On July 27th 1872, White entered judgment on the note given for this loan. After their property had been sold by the sheriff, White assigned to Morss one-half of the judgment entered, under a stipulation that White's part of the judgment was to be paid out of the proceeds of the sheriff's sale, and if anything remained it was to apply on that part of the judgment assigned to Morss. Under the auditor's report, Morss received $105.57, and at another time about $101. The rest of the judgment, $1250.20, remained

[Hartley *v.* White.]

unpaid. And for this, on June 24th 1875, Morss issued this attachment-execution against Hartley as garnishee, on the ground that he had in his possession property which belonged to the firm of Decker & Halstead.

It appeared, that on December 2d 1872, Hartley bought from Halstead certain notes and judgments, taken by Decker & Halstead in their firm business, amounting in the aggregate to $2050, for which he paid him $753, of which sum, $35.21 was a debt due by the firm to him, and the rest in notes which he held of Halstead individually, except $225, which he paid on a note of Halstead's, held by one Stewart. When these notes were bought the firm was greatly involved, and they were sold without the knowledge of Decker, who had purchased Halstead's interest in the firm. Some time after the notes were sold the firm became insolvent. Hartley, as he alleged, collected about $700 of the notes.

In the general charge, the court, Morrow, P. J., inter alia, said: "Hartley claims he purchased of Halstead, about December 2d 1872, notes and judgments owned by Decker & Halstead, amounting to $2050, and paid him therefor $753, of which $35.21 was a debt held against them, and the rest was in notes he held against Halstead alone, except $225, which he paid on a note one Stewart had against Halstead. He swears that he considered many of these notes almost or entirely worthless, but that the purchase was made with the knowledge and express consent of Decker. This Decker denies *in toto*, except as to the Gifford note, as you will recollect his evidence in regard to that in connection with Mrs. Gifford's evidence. The plaintiff claims to recover the amount yet unpaid on his judgment against Decker & Halstead, $1250.20, if the jury find the notes in the possession of Hartley are of that value. If not of so great value, then to recover an amount equal to their value. He bases his right to recover on the ground that the transfer of the notes assigned to Hartley was fraudulently made, the fraudulent purpose being to pay the individual debts held against Halstead out of the firm property, and to prevent the same from being applied to firm debts. If the jury find the transfer was fraudulent, and was made for the purpose stated, and Hartley, colluding with Halstead, or with Decker & Halstead, obtained the notes, &c., knowing they were the property of the firm, it was void, and the plaintiff may recover whatever they were worth. This for the reason Hartley acquired no title as against the creditors of Decker & Halstead. They may follow and seize them in his hands as firm property. Or, if the jury find that Hartley obtained the notes and judgments from Halstead in payment of the debts against Halstead, without the knowledge or consent of Decker, knowing them to be firm property, the plaintiff may recover their value. This for the

[Hartley v. White.]

reason that by the action of Halstead the firm were not deprived of their title to this property, and could maintain suit therefor; this being the fact, the creditors of Decker &, Halstead could reach and hold them upon attachment-execution.

"One partner cannot use the property of the firm to pay indi-. vidual debts, even if the act is honest and in good faith if his copartners had no knowledge of the transaction, if such transfer prevents the creditors of the firm from collecting their debts. A different rule prevails if both parties consent bona fide to the transfer. You will recollect that Hartley swears Decker did consent to it.

"Fraud is not presumed; the burden is on the party alleging fraud to establish it by satisfactory evidence."

The court directed the jury to find a special verdict, and stated to them all the facts their finding should cover, calling their attention to evidence bearing upon each proposition they were to determine and find in their verdict.

The jury found the following special verdict: "We find that the money for which the note was entered in No. 715, August T. 1872, was borrowed by Decker & Halstead, copartners, and used in their partnership business, of which $1250.20 remain unpaid. Attachment execution served July 24th 1875. That Silas Hartley, garnishee, obtained from Andrew Halstead about the 2d of December 1872, notes and judgments amounting to about $2000, face value; that the notes and judgments belonged to and were the property of Decker & Halstead when so assigned and transferred. That he has collected on these notes $700, and has given up other notes to the makers and included in notes taken in his own name to the amount of $723. That the interest on $700 is $210, and on the $723 is $216.90, computed by us for five years. We find that the notes and judgments not collected, surrendered, were of the value of $125 when they were transferred to Hartley, interest on same for five years, being $37.50. We further find that the value of the notes surrendered by Hartley to the makers and new notes taken by him, and now uncollected, were of the value of $578.40, interest thereon for five years, $173.50. For all the notes and judgments which Hartley received from Halstead he paid Halstead $493.53 by delivering to him his notes and accounts he held against Halstead individually, and also paid a note of about $225, which one Stewart held against Halstead. He also applied payment of a debt he had against Decker & Halstead of $35.21, making a total of $753.74. We further find that the transfer of these notes adjudged was fraudulent and intended by Halstead and. Hartley to be in payment of Halstead's private debts, and to prevent the same from being used and applied in the payment of the firm debts of Decker & Halstead, and the transfer was in the absence and without the knowledge or consent of M. J. Decker,

13 NORRIS—3

[Hartley *v.* White.]

except as to the Gifford note, and that at this time Decker & Halstead were largely in debt, and soon after became insolvent and unable to pay their debts, the debt of the plaintiff being one.

"We find also that about five years ago Hartley borrowed a pair of platform scales, property of Decker & Halstead. At the time he borrowed them they were of the value of $65; that on being required to return them he refused unless Decker & Halstead paid an individual debt he owed him, said Hartley, and he still has them in his possession.

"We find for the plaintiff such sum as the court may be of opinion he has a right to recover under these facts, verdict to be moulded by the court, and judgment entered thereon in such manner and amount as the court may deem legal and proper. If the court be of opinion he cannot recover under the facts found by us then our verdict is for the defendant."

Subsequently a rule was granted to show cause why judgment for $1250.20 should not be entered, which the court made absolute by the following entry of record:

"April 27th, rule absolute, judgment in favor of plaintiff and against the said garnishee for $1250.20 and costs. Under the Act of Assembly and the cases (*vide* Bonaffon *v.* Thompson, 2 Norris 460), execution is restricted first, as to the goods and effects in the garnishee's hands, or so much thereof as may satisfy the plaintiff's demands, and secondly, against him as of his proper debt if he refuses to produce such goods and effects. By the court."

The garnishee took this writ, and alleged that the court erred in the above portions of the charge; in the form of the special verdict, and in the entry of judgment thereon.

*Littles* and *Blakeslee*, for plaintiff in error.—We admit the priority of firm over individual creditors, where both have acquired liens on the partnership assets before a sale. It is the specific lien before a sale that enables the firm creditor through the equity of the other partner to enforce his priority. A general creditor of the firm has no such lien, and could not restrain an individual partner from selling his interest: Young *v.* Frier, 1 Stockt. 468; Mittnight *v.* Smith, 2 C. E. Green 268.

The right of a firm creditor is subordinate to the power of a partner to make a bona fide disposition of his interest before the creditor has acquired a lien: Field *v.* Hunt, 24 How. Pr. 463. The lien of the partnership creditors is in time if acquired before the sale: Coover's Appeal, 5 Casey 9. After a sale and delivery to a third party a firm creditor cannot follow: Deal *v.* Bogue, 8 Harris 234. It must appear that Decker had an equity existing in him, else Morss, the firm creditor, is remediless: Collgrove *v.* Tallman, 67 N. Y. 95. The reverse appears. By the contract, Decker was to pay the firm debts—unless, indeed, the purchase-

[Hartley v. White.]

money going to Halstead was insufficient to pay his half. This made Decker the principal and Halstead a surety—at least until Decker had shown he had so applied the purchase-money, and it was not sufficient. This he did not show.

This equity belongs to the partners and not to the creditors. If the partners waive or extinguish it, it cannot be set up by firm creditors: Taggert v. Keys, 3 Phila. R. 97. The firm title to these notes passed to Hartley. This, because of the power of one partner to sell a chose in action. 2d. Because of his right, without consent of the other partner, to pay a firm debt. The mere preference of individual debts over partnership debts is not such a fraud upon partnership creditors, that after it has been done it will be set aside by a court of equity : National Bank v. Sprague, 5 C. E. Green 30.

It is essential to a special verdict that it contain all the facts upon which the judgment of the court is to rest. Nothing is to be taken in by implication or intendment; whatever is not found in it is supposed not to exist: Pitts., F. W. & Chicago Railroad Co. v. Evans, 3 P. F. Smith 250 ; Berks Co. v. Pile, 6 Harris 493 ; Thayer v. Society of United Brethren, 8 Id. 62. Nothing can be supplied by the charge: Craven v. Gearhart, 1 W. N. C. 257. Nor from the evidence : Commonwealth v. McDowell, 6 W. N. C. 74.

This special verdict was fatally defective, inasmuch as it did not state the amount of the Gifford note, nor find the dissolution of the firm.

*E. Robinson*, for defendant in error.—A partner cannot make a valid transfer of firm property, in payment of his individual debt, without the consent of his copartner : Todd v. Lorah, 25 P. F. Smith 155. One partner cannot appropriate the funds, or securities or effects of the partnership, in discharge or payment of his own private debts, claims or contracts ; and a transaction of this kind with a partner, with a knowledge of the circumstances, will be deemed mala fide, and be treated as a nullity : Leonard's Ex'rs v. Winslow et al., 2 Grant 139. A partner cannot divest the title of the firm to partnership property by a fraudulent delivery to a third person as security for his separate debt, nor for his own benefit in any way : Porter v. Miller, 1 W. N. C. 240.

An attaching creditor takes the property in the hands of the garnishee with all its legal incidents, and is entitled to the fund produced by such property : Fessler v. Ellis, 2 Grant 472 ; Fitzsimmons's Appeal, 4 Barr 248 ; Fox v. Foster, Id. 119. The argument of plaintiff's counsel, and authorities cited by them, showing the right of a partner to sell bona fide his interest in the firm property before a lien has attached, evidently have no application to the circumstances of this case. The argument of plaintiff in error as to what a special verdict should contain is admitted.

[Hartley v. White.]

But it is evident this one does contain all the facts upon which the judgment of the court is to rest. There was no more reason why the Gifford note should be mentioned than any other note.

Mr. Justice MERCUR delivered the opinion of the court, May 3d 1880.

This judgment was entered on a special verdict. It does not present the facts in a clear and methodical manner. It is not a model to be followed. It may, however, be sufficient to sustain a judgment. The plaintiff in error was served as garnishee of Decker & Halstead, copartners. The jury found that, in fraud of the creditors of the firm, and without the knowledge or consent of Decker, except as to one note (shown by the evidence to be about $40), Halstead assigned and transferred judgments and notes, the property of the firm, amounting to about $2000, to the garnishee; that the transfer of this property was fraudulent, and intended by Halstead and the garnishee to be in payment of Halstead's private debts, and to prevent the same from being used and applied in the payment of the firm-debts of Decker & Halstead; that the firm was at the time largely in debt, and soon after became insolvent. They further found that, out of the claims thus assigned to the garnishee, he had collected a specific sum in cash, and that he had surrendered to the makers notes, and taken new ones therefor, for a sum certain and of sufficient value, added to the cash received, to exceed by several hundred dollars the sum due to the attaching-creditor, or for which judgment was entered against the garnishee.

It is well settled that one partner cannot make a valid transfer of firm property, in payment of his individual debt, without the consent of his copartners: Todd v. Lorah, 25 P. F. Smith 155. Such act is a fraud on his copartner, and the right of property in the firm does not pass to the individual creditor. The present case goes still further. Not only was the attempted sale a fraud on the copartner, but it was intended and operated as a fraud on the creditors of the firm. It is, then, clear, under these facts, the purchaser cannot hold the property against the creditors intended to be defrauded. He has no reason to complain of the amount for which judgment was entered against him. It is for a sum less than he has realized out of the property.

It is further objected that the form of the judgment is wrong. It must be conceded that the reference to the Act of Assembly, and to the case of Bonnaffon v. Thompson, might more appropriately have been made in an opinion of the court than to be interwoven in the judgment. This, however, is not a fatal error. The form of the judgment can be amended. It is now done by striking out those references so that it shall stand judgment in favor of plaintiff below and against said garnishee for $1250.20 and costs, to be levied of the goods and effects of Decker & Halstead in his

[Hartley v. White.]

hands; or, in case he fails or refuses to produce such goods and effects sufficient to satisfy the execution, then to be levied against him as his own proper debt.   Thus amended, the

Judgment is affirmed.