## Wytheville.

### LIBERTY SAVINGS BANK v. CAMPBELL AND ALS.

#### August 11.

#### Absent, *Moncure*, P.

1. The rule is now settled that the authority of each partner to dispose of partnership property extends only to the business and transactions of the partnership, and any disposition of the property beyond such purposes, without the consent of the co-partner, is an excess of authority.

2. One partner cannot pledge or sell the partnership property, in payment of his individual debts, without the consent of his co-partner; and the title is not divested by such pledge or sale in favor of a separate creditor, even though the latter may not know it was partnership property.

3. J and C were partners and the owners of two bonds executed to them on on a sale of land; the bonds were in the custody of J, who, to raise money for his private purposes, pledged them by an attempted assignment, along with other securities, to the Liberty Savings Bank, where he procured certain notes to be discounted, and used the proceeds, sometimes for his own benefit and some times for the benefit of the firm. The bank afterwards made collections on the bonds, and ultimately became the owner of them by purchase at public auction, where they had been sold as forfeited collateral. In a controversy between C (representing the firm) and the bank, representing the bonds and their proceeds— HELD : That the bank is equitably entitled to set off against C's claim the amount of money which the bank paid out on J's checks, and which actually went to the discharge of the partnership debts, and it makes no difference that the money so checked upon by J was the proceeds of notes discounted by the bank for his private accommodation.

4. A commissioner's report not excepted to in the court below, cannot be impeached before the appellate court in relation to matters which might be affected by extraneous testimony.

In August, 1878, Thomas Campbell filed his bill in the clerk's office of the circuit court of Bedford county against R. C. Jones, Stephen R. Holland, William Graves, and the Bedford Savings Bank at Liberty, in which he alleged that about the year 1873 a partnership was formed between himself and said Jones, under the firm name of Jones & Campbell, for the purpose of sawing and selling lumber, and to that end they purchased of Mrs. Saunders and Mrs. Chalmers a tract of about 500 acres of timbered land, of which about 250 acres were subsequently sold by the firm to said Holland at the gross price of $3,454.48, of which $1,000 was paid in cash and three bonds of $818.16 each, payable to Robert C. Jones and Thomas Campbell, were executed for the balance of the purchase money. The bonds fell due respectively on the 1st days of August, 1874, 1875 and 1876. The bill further alleged that the bond due August 1st, 1874, "is paid off"; that the other two bonds were unpaid, so far as complainant knew or believed, but that Holland claimed to have paid in money or by offsets $284.65, which the plaintiff was willing to allow; the firm of Jones & Campbell was considerably indebted to various persons, and also for the purchase money of the land sold by Mrs. Saunders and Mrs. Chalmers, for which a judgment had been obtained in said court; that Jones held the Holland bonds for the beuefit of the firm, and plaintiff supposed the proceeds thereof when collected would be applied to the debts of the firm. Instead of this, however, Jones, in violation of the rights of the firm, had pledged the said bonds as collaterals with the said Savings Bank to secure the payment of his individual indebtedness to said bank, and complainant was informed that the bank had collected of Holland a large portion of the bond due August 1, 1875, while an action at law was then pending on the other bond in the name of Jones & Campbell for the benefit of William Graves, in which Holland, after claiming the credits aforesaid, asked that com-

plainant and said Graves be required to interplead. Complainant charged that the bonds were sold by the bank at public auction; that the one then in suit was bought by Graves for $50 and the other by D. J. Early at a nominal price and transferred to the bank; that the bonds showed upon their face that they were not Jones' individual property, but belonged to the firm of Jones & Campbell, and that complainant, as soon as he learned the bonds were in the possession of the bank, gave notice to Holland of the rights of the firm, and warned him not to pay said bonds. Complainant claimed that the bonds were the property of the firm, and that the proceeds should be applied to the firm debts; that Jones, who was insolvent, had no right to divert them from that channel, and that the bank, having taken them as collaterals for Jones' private debt, could stand in no better position than Jones; that the bank should be required to surrender said bonds for the benefit of the firm creditors and repay such amounts, with interest, as had been collected thereon, or that Holland be required to repay the amounts so improperly paid by him. The firm of Jones & Campell had been dissolved and the assets, including the bonds, were insufficient to pay its debts. The prayer of the bill was in accordance with the pretensions thus set forth.

The Savings Bank and William Graves filed a joint answer, in which, after admitting certain allegations of the bill and denying all knowledge of the state of the partnership accounts of Jones & Campbell, either as regarded themselves or third persons, or what payments had been made or offsets accrued in favor of Holland as to said bonds, they went on to say that about January, 1875, R. C. Jones obtained at said bank a discount of $1,000, at 90 days, upon his note, which was secured by certain collaterals, including one of the Holland bonds, payable to Jones & Campbell, assigned in blank by Jones & Campbell and

said Jones, and due August 1st, 1875, for $818.16. Respondents believed that prior to this transaction Campbell had authorized Jones to use for his private benefit $300 of the proceeds of said bonds, and that the assignments endorsed thereon were valid and proper. On September 4th, 1875, the bank discounted another note for Jones for $1,200, payable at 90 days, and secured by collaterals, including Holland's third bond, due August 1st, 1876, for $818.16, which bore endorsements of assignments similar to those on the other bond. After this hypothecation sundry payments, amounting to $709.10, were made by Holland to the bank on account of the first bond, and $300 on account of the second bond. Respondent denied that Holland was notified not to pay the bonds to the bank until the last payment had been made, and insisted that as assignee the bank had a right to collect the bonds, and that Holland's payments thereon were valid. It was admitted that the bonds were sold at auction, in pursuance of the terms of hypothecation, and that they were then owned by the bank. Respondents further showed that the sum of $1,460.25 of the proceeds of the discounts were applied by Jones to the payment of the purchase money due by Jones & Campbell to Mrs. Saunders and Mrs. Chalmers, and that the last payment of $1,000 on that account was made in pursuance of an express agreement between Jones and Graves, president of the bank; Jones still owed the bank $917.30 as of September 5, 1878, on two of his notes for the balance of the discounts. Respondents claimed that whatever might have been the private understanding between Jones and Campbell, yet to the extent to which Campbell had authorized Jones to use the bonds for his private purposes, any disposition of them so made by him was binding on Campbell; and that so far as the proceeds of the discounts were applied in discharge of the firm debts, Campbell was equally bound.

VOL. LXXV—68.

Holland also answered, and said that before the first bond was due he knew that it had been assigned to the bank, and he agreed to pay the amount to one Hatcher, to be by him paid towards Jones & Campbell's debt for the land, which was afterwards done and the bond taken up. Before the second bond fell due, respondent had notice that it was held by the bank, either absolutely or as collateral, and he made payments thereon to the bank amounting to $709.10. Before notice of the transfer he had furnished Jones & Campbell certain supplies and provisions to be credited as payments on the land; and before notice of the assignment of the third bond, he had furnished other supplies amounting to $159.65, and also signed a bond given as security to Mrs. Overstreet, with the distinct understanding that any money paid on said bond should be credited in like manner, on which bond a balance of $70 was still due, and respondent would probably have to pay it. Afterwards he learned on enquiry that the bank held the third bond, and he paid $300 on account thereof to the bank; but before doing so, having found that Jones & Campbell were behindhand in their payments to Mrs. Saunders and Mrs. Chalmers, and that there was danger of an effort being made to subject the land to payment of the purchase money due thereon, respondent paid $125 on account of the bonds of Jones & Campbell. Afterwards he received a notice from Campbell, after which he refused to pay any more money to anybody, and suit was brought on the third bond for the benefit of the bank or of Wm. Graves, and thereupon respondent filed an affidavit of interpleader, and then the plaintiff filed his bill in the cause.

Much testimony was taken, but it does not seem to have materially varied the case as it stood on the bill and answers. Accounts were directed, and in the report of the commissioner filed May 15, 1880, he included among Holland's payments to the bank the first bond, which made the

aggregate payments amount to $1,901.56.   The report also
showed the sum of $1,760.25 to have been properly paid
out of the proceeds of Jones' notes on account of partner-
ship debts, and for his private use, as authorized by Camp-
bell.   The bank excepted to this report, but the court, over-
ruling the exceptions, confirmed the report, and leaving the
bank unpaid as to its whole debt of $917.30 against Jones,
decreed that it pay to Campbell $141.31, and that Holland
pay him the balance due of $854.06.   On the petition of the
bank an appeal and *supersedeas* were awarded by one of the
judges of this court.

*R. G. H. Kean,* for appellant.

*C. H. Bower,* for Campbell.

BURKS, J., delivered the opinion of the court.

In the opinion of this court, delivered by Judge Sta-
ples in *Binns* v. *Waddill,* 32 Gratt. 588, 594, it was said
"that the rule seems to be settled that the authority of
each partner to dispose of partnership property extends
only to the business and transactions of the partnership.
And any disposition of the property beyond such purposes,
without the consent of the co-partner, is an excess of
authority.   And further, one partner cannot pledge or sell the
partnership property in payment of his individual debts,
without the consent of his co-partner ; and the title is not
divested by such pledge or sale in favor of a separate cred-
itor, even though the latter may not know it was partner-
ship property."   Though, as stated, it was not deemed
necessary in that case to express any decided opinion upon
the subject, we are satisfied that the law was correctly
expounded.   *Rogers & Sons* v. *Batchelor and others,* 12 Peters,
221, cited by Judge Staples, is a leading case.   Mr. Justice

Story, in delivering the unanimous opinion of the supreme court, said, "that the true principle to be extracted from the authorities is, that one partner cannot apply the partnership funds or securities to the discharge of his own private debt, without their consent; and that without their consent their title to the property is not divested in favor of such separate creditor, *whether he knew it to be partnership property or not*. In short, his right depends, not upon his *knowledge* that it was partnership property, but upon the *fact, whether the other partners had assented to such disposition or not*." The law is now generally considered as settled in conformity with this decision of the supreme court of the United States, as may be seen by reference to the numerous cases cited by the annotators in 1 Amer. Lead. Cas. (5th Ed.), marg. p. 453. Nor does it make any difference whether the private debt to which the social effects are applied be created at the time they are so applied or has antecedent existence. See *Johnson* v. *Crighton*, recently decided by the court of appeals of Maryland, 11 Reporter, 811, 812, and cases cited.

It is admitted that Jones and Campbell were partners, and that the two bonds of Holland, payable to them and due August 1, 1875, and August 1, 1876, respectively, were the property of the firm, and it is very clear from the proofs that these bonds were pledged by Jones to the bank as a security for the payment of the notes of Jones, discounted for his individual accommodation and benefit. We are also satisfied that the bonds were thus pledged without the knowledge or consent of Campbell, except as to the sum of three hundred dollars, which Campbell had previously agreed that Jones might raise on one of the bonds for his private use. Whether the bank, at the time it took the bonds under the arrangement made with Jones, had knowledge that they belonged to the firm, is an immaterial inquiry under the rule of law which has been stated.

From these facts, admitted or proved, it results that the bank is accountable to the firm for these bonds and whatever it has collected upon them. But this liability is subject to the qualification that the bank (there being no actual fraud in the transaction on its part) is equitably entitled, as against the claim of the firm, to set-off not only the three hundred dollars which Campbell had consented that Jones should apply to his individual use, but also so much of the proceeds of the discounted notes as was applied by the bank, on the orders or checks of Jones, to the partnership debts. If the bonds had been absolutely *bona fide* sold and transferred to the bank upon an agreement that the bank should apply the consideration of the sale to the social debts and such application had been made, the bank would have been protected. And though the notes were discounted for the individual accommodation of Jones, yet, if the bank on his checks, and thus by his direction, paid any of the proceeds to the partnership debts, it would seem but just and equitable that in accounting for the bonds and the collections upon them, the bank should have credit for what was thus paid. The money was actually paid to partnership purposes.

The amounts thus applied, as shown by the commissioner's report, aggregate $1,460.25. Adding to this the $300 which Jones had the right, by Campbell's consent, to use for himself, makes $1,760.25. This sum exceeds the aggregate of the two bonds held by the bank, and after crediting the bonds with the amounts collected thereon by the bank, the balance owing by Holland on the bonds is less than the balance owing by Jones to the bank on the discounted notes, which had been repeatedly renewed.

Objection is made here by the appellee to allowance of the credits, on the ground that the payments by the bank were not made from the proceeds of the notes for which the bonds were pledged. It is a sufficient answer, that the

commissioner allowed the credits and the appellee did not except to the report on that account. The objection, if made by exception below, might, perhaps, have been met by additional extraneous evidence. Made here, for the first time, it comes too late. It has been often decided by this court that reports not excepted to in the court below, cannot be impeached before the appellate court in relation to matters which may be affected by extraneous testimony. 2 Rob. Practice (Old Ed.), 383, and cases there cited; *Peters* v. *Neville's Trustees and others,* 26 Gratt. 549; *Coles' Committee* v. *Coles' Adm'r,* 28 Gratt. 365, 370; *Simmons* v. *Simmons' Adm'r and others,* 33 Gratt. 451, 456.

But if the exception had been duly taken, it could not have been sustained. It is clear that the sums paid were on the checks of Jones on account of partnership liabilities. That we do not understand to be disputed. Now, the first note (for $1,000), which was secured by Holland's second bond, was dated January 18, 1875. At that time there was nothing to the credit of Jones in the bank. It was discounted and the proceeds placed to his credit, and the very next day he drew the check for $111.50 in favor of Hayward. The check for $248.70 was drawn about two weeks afterwards. And as to the check in favor of Mrs. Saunders for $1,100, it appears distinctly that by agreement it was to be paid from the proceeds of the note for $1,200 which was secured by Holland's third bond, and it was no doubt so paid. The note bears date September 4, 1875, and the check September 6 (two days after the date of the note). These credits were virtually admitted to be correct by the acquiescence of the appellee in the allowance by the commissioner, and we think that independently of this, it sufficiently appears from the evidence that they were properly allowed.

So that, upon a proper statement of the account, debiting the bank with the aggregate of the two bonds and credit-

ing it with the $300 to which Jones was individually enti-
tled, and with what had been properly applied from the
proceeds of the discounted notes for which the bonds were
pledged, the bank would be clearly entitled to the bonds
as against the claim of the appellant, and also to the money
which was collected upon them. This is perfectly mani-
fest from the record.

But the commissioner charged the bank, not only with
what had been collected on the two bonds which have been
mentioned, but also with the amount of another bond of
Holland to Jones & Campbell payable August 1, 1874, which
had been transferred or pledged by Jones to the bank, and
had been collected. The bank excepted to this charge, but
the court overruled the exception. Of this action of the
court the appellant chiefly complains, and, we think, the
complaint is well founded. No question is raised by the
pleadings as to this bond. It is merely mentioned in the
bill, and it is there stated that it is "paid off." This would
seem to be a plainly implied admission that it was prop-
erly paid. However that may be, the bill sets up no claim
whatever against the bank on account of it, but seeks relief
only as to the *two* bonds which have been mentioned, and
asks that the bank be required to surrender *these* bonds and
repay the amounts collected "*on the same*" with interest, or
that Holland be required to pay the amounts improperly
paid by him to the bank. Accordingly, the answer of the
bank, admitting that the bond in question had been dis-
charged, is otherwise confined exclusively to the allega-
tions as to the other two bonds, and to matters of defence
connected with them. No issue is raised or made, even
remotely or impliedly, as to the bond referred to, and it
surely cannot be necessary at this day to cite authority for
the proposition, that what is not in issue is not in the case.
What has been said in relation to this bond applies also to
the bond of Holland for the cash payment of the land

bought by him, or what was collected by the bank on that bond, which the appellee, by exception to the commissioner's report, claimed should be charged against the bank, but the court overruled the exception. No reference whatever is made in the bill to this bond.

But the appellee's counsel attempts to meet the objection by saying, that the amounts collected by the bank on these two bonds are proper set-offs or counter set-offs to the claim of the bank in the answer, to credit for the payments made to the partnership debts. But this pretension cannot be sustained. When the bank disclosed its defence by its answer and asserted the claim to the credit, if the appellant intended to meet the claim by charging the bank with the proceeds of the first two bonds, he should have filed an amended bill for the purpose and put the matter in issue.

But apart from the objection founded on the pleadings, it would seem that there is no liability on the bank for the proceeds of these bonds. Without going into a minute examination of the evidence, it sufficiently appears, we think, that the proceeds of notes discounted equivalent to the amounts of the bonds held as collateral security, were applied to partnership obligations. Jones paid to Mrs. Saunders, on account of the partnership liability, one thousand dollars by check on the bank June 10, 1874. The bank probably then held Holland's bond for the first installment of the purchase money for the land bought by him. It is true it was not then due, but Holland says that this bond was assigned to the bank before it was due, and that he was present when it was assigned, and that the agreement was made that the proceeds should go to Mrs. Saunders; and the cashier says that the payments made afterwards by Holland were credited on a note of Jones, for which the bond was held as collateral security. Then there is proof tending to show that other sums were paid by Jones towards the social debts by checks on the bank.

But it is not necessary to rest our decision on this view of the case, though it may be a sufficient answer to the pretension of the appellant as to the two bonds first falling due. It is enough for us to see and to know that the claim preferred as to these bonds is outside of the pleadings and the issues made in the cause.

For the reasons stated, we are of opinion that the decree of the circuit court is erroneous. It will therefore be reversed and the bill dismissed.

DECREE REVERSED.