LEAVITT and another *against* GAD PECK and another.

June 24.

The implied authority of one partner to bind his co-partner, by contract, may be revoked, by the refusal of the latter to be thus bound, communicated to the party in whose favour the contract is to be made.

And it makes no difference, in such case, that the partner revoking is a *secret* partner, and that the existence of the partnership is unknown to the opposite party.

New-Haven,
June,
1819.

Leavitt
v.
Peck.

Whether one partner, in any given case, has revoked the implied authority of his co-partner to bind him, is a question of *fact*. Therefore, where the court directed the jury, in an action on a promissory note against *A.* and *B.*, as partners, that if *A.* was a dormant partner with *B.*, and refused to give a joint note with him, the defendant was entitled to a verdict, it was held, that this was a misdirection; for as these facts were not *necessarily* a revocation of the implied authority of *B.*, they ought to have been submitted as *evidence* only of such revocation.

THIS was an action on a promissory note against *Gad Peck* and *Egbert D. Peck*, described as merchants in company, under the firm of *Egbert D. Peck.* The note was in these words: " *New-Haven, October* 22nd, 1817. On demand, I promise to pay Mr. *Gad Peck*, or order, eleven hundred and fifteen dollars and fifty-two cents, value received, with interest. [Signed.] *Egbert D. Peck.*" It was endorsed, " *Gad Peck.*" *Egbert D. Peck* suffered a default ; and *Gad Peck* pleaded *non assumpsit.*

The cause was tried on this issue, at *New-Haven, January* term 1819, before *Trumbull, Hosmer* and *Peters*, Js.

The plaintiffs introduced evidence to prove, and claimed that they had proved, that on the 4th of *May*, 1816, the defendants entered into a co-partnership to carry on business under the firm of *Egbert D. Peck*, and, immediately afterwards, commenced business for their joint benefit ; that *Egbert* alone, and in his own name, transacted that business, and was the only person known in it, *Gad* being a dormant partner, not known to the public, or to either of the plaintiffs, as having any concern therein, until long after the note in suit was given ; that in the course of the business of this co-partnership, and for the joint use and benefit of the defendants, *Egbert* purchased of the plaintiffs sundry goods, and the defendants as partners, were, on the 22nd of *October*, 1817, when the note in suit was given, jointly indebted to the plaintiffs for such goods ; that in consideration of such indebtedness, and during the existence of such copartnership, the note in suit was given, which *Gad* endorsed ; and that there had not been, at any time, a dissolution of the co-partnership. On the other hand, the defendant, *Gad Peck*, denied, that he was a partner with *Egbert*. It was agreed, however, that he had given to *Egbert* a general letter of credit, by virtue of which the goods were taken up, and the debt contracted, for which the note was given. He also, gave evidence to the jury, that at the time when the note was given, *Leavitt*, one of the plaintiffs, applied

to him to sign a note with *Egbert* for the goods, which he refused to do ; but he consented to endorse, and did endorse *Egbert's* note, and *Leavitt* accepted it. The court charged the jury as follows : " This case depends upon the decision of two questions of fact ; first, was *Gad Peck* a secret partner of *Egbert* ; and secondly, did *Gad Peck*, in the presence of *Leavitt*, one of the plaintiffs, refuse to give a joint note with *Egbert*, and to give any note to the plaintiffs for this demand ; and declare that he would only endorse the separate note of *Egbert*, on which *Egbert* gave the note in suit ; and it was so endorsed by *Gad Peck*, and accepted by *Leavitt*. If you find that *Gad Peck* was a secret partner with *Egbert*, and that he did not make such refusal and declaration, in the presence of *Leavitt*, you will return a verdict for the plaintiffs. But if you find that *Gad Peck* was not a secret partner ; or if a partner, that he refused to give any note to the plaintiffs, but declared, that he would only endorse the separate note of *Egbert*, and this in the presence of *Leavitt* ; and that thereupon *Egbert* gave the note in suit, which was endorsed by *Gad Peck*, and accepted by *Leavitt* ; you will find a verdict for the defendant." The jury found a verdict for the defendant ; and the plaintiffs moved for a new trial, on the ground of a misdirection.

*N. Smith* and *Twining*, in support of the motion, contended, 1. That the existence of the partnership, and the execution of the note in the name of the firm, being established, *Gad Peck* must, of course, be liable, unless exonerated by some act of his own, or of the plaintiffs. The only acts of *his*, relied on, for this purpose, are, first, his refusal to give a note in his individual name, and secondly, his offer to endorse, and his actually endorsing, a note given by the acting partner. Neither of these acts expressly, or, impliedly, revoked the power of one partner to bind the company. *Gad Peck* did not refuse to be bound by the signature of his partner ; he did not withdraw from the partnership, or from this particular transaction ; but refused to give his *individual name* for a partnership debt. His endorsing the paper of the company certainly did not exonerate him from liability as a member of the company ; the only effect of that act being to bind him with another cord. Nor could the plaintiffs' *acceptance* of the note so endorsed operate as a discharge of his liability, or as

a relinquishment of their right to look to him as a partner. If it be said, that their requiring him to endorse the note, after it was made in the manner stated, shows that they did not consider him as already bound; the obvious answer is, that as he was a *secret* partner, his liability was not affected by the degree, or entire want, of credit given to him.

New-Haven,
June,
1819.

Leavitt
v.
Peck.

2. That admitting the giving and accepting of the note in question, if done *bona fide*, would have the effect claimed on the other side; yet as *Gad Peck* suppressed a material fact, which the plaintiffs had a right to know, and thereby induced them to give up the partnership security, the transaction, as to him, will be unavailing. He will not be allowed to take advantage of his own fraudulent act.

*Staples* and *Denison*, contra, contended, 1. That as this was an action upon an *express contract, viz.* a promissory note, and as *Gad Peck* declared to the plaintiffs, at the time when the note was given, that he would not give *any* note, but would merely endorse the individual note of *Egbert D. Peck*, no recovery can be had against him *in this action*. *Gad Peck*, not only did not make the express promise declared upon, but expressly refused to make any such promise. Suppose he had said, " I will not give a note, but I hold a note against *A. B.*, which I will endorse over to you;" and this had been done: would it be claimed, that he could be sued as a joint maker of that note? How does this case differ from that? If *Gad Peck* be bound by this note, it must be on the ground, that *Egbert* had authority to bind him, by virtue of the co-partnership; but that authority is taken away, by his express declaration, that he would not give—*i. e.* be bound as maker of—any note for the plaintiffs' debt. The authority of one partner to bind the other, is at all times revocable, by an express declaration to the contracting party. Lord *Galway* v. *Matthew & Smithson*, 1 *Campb.* 403. S. C. 10 *East* 264. *Willis* v. *Dyson*, 1 *Stark.* 164.

2. That the plaintiffs having accepted the individual note of *Egbert*, though taken to secure a debt against the partnership, are thereby precluded from resorting to the partnership. *Siffkin* v. *Walker & Rowlestone*, 2 *Campb.* 306. *Emly* & al. v. *Lye* & al. 15 *East* 7. That the signature, " *Egbert D. Peck*," was intended for, and understood to be, the individual name

of that person, and not the name of the partnership, is abundantly evident from what took place at the time.

3. That if the plaintiffs took this note ignorant of their rights, that fact can have no effect upon the legal operation of the note. The most that could be said upon that point, would be, that, the note being thus taken, the original cause of action remains in force. Besides, the plaintiffs were not ignorant that *Gad Peck* was holden to pay this debt ; as he had given *Egbert* a letter of credit. His liability was *open*, in a particular way.

HOSMER, Ch. J. It is a well established principle, that the contract of a partner is obligatory on his co-partner, by virtue of an implied authority, which may be rebutted, by a refusal to be bound by his acts. By legal consequence, the partner whose authority is thus declined, cannot bind the co-partnership, in favour of those, who have knowledge of this fact. Lord *Galway* v. *Matthew & Smithson*, 1 *Campb.* 403. S. C. 10 *East* 264. *Willis* v. *Dyson*, 1 *Stark.* 164. Nothing can be more reasonable than that a person may protect himself, in this manner, against the fraud and misconduct of his associate. The principle under consideration is not founded at all on any supposed waiver by the creditor ; but solely and exclusively on the declaration of the person declining to be bound. The implied authority of his partner he has annihilated ; and the contract in the name of the firm, is of no validity, beyond the personal obligation it infers on the individual making it.

Whether a person, in any given case, has rebutted the implied authority of his partner to bind him, is a question of fact. On this head I am inclined to think the charge to the jury was incorrect. They were directed, if *Gad Peck* was a dormant partner with *Egbert*, and refused to give a joint note with him, to render a verdict for the defendant. The charge involved this principle ; that a refusal by *Gad Peck* to put his name to the note in suit, was necessarily a revocation of *Egbert's* implied authority. This ascribed a consequence to the act of *Gad Peck*, which the premises did not warrant. It is very possible, that he might decline affixing his signature to the note, and not refuse to be bound by his acts as a partner.

I am aware, that there is a difficulty attending the prohibition of *Egbert's* authority, without dissolving the partnership ; but I do not consider it as insuperable. If it should appear,

that *Gad Peck* did not merely decline to execute a joint note with *Egbert*, but refused to be bound by his act, in all events, and this was clearly understood by the plaintiffs, I should consider him as within the principle of the cited cases.

The ignorance of the plaintiffs relative to the existence of the copartnership, could be of no avail. It is true, they did not know, that *Gad Peck* was partner with *Egbert;* and of consequence, they could not foresee the manner in which his refusal to become bound as joint promissor would operate. But they would know, and this alone was necessary, that, if *Egbert* were a partner, his authority was disclaimed. The opposite principle involves this proposition; that the plaintiffs must have knowledge of the precise consequences to which the refusal would extend. Sufficient is it, if they know the fact, that in every conceivable shape, *Gad Peck* refused to be bound by the note of *Egbert.*

PETERS, J.    I think the charge of the court on the circuit was correct. The first question submitted to the jury, was certainly proper; was *Gad Peck* a co-partner of *Egbert D. Peck?* If decided in the negative, it made an end of the case; if in the affirmative, it introduced the second question, did *Gad Peck*, in the presence of *Leavitt*, refuse to incur any new liability for this debt, other than as endorser? And the jury were properly instructed to return a verdict for the defendant, if they found he did so refuse, and the plaintiffs accepted his endorsement. It seems to be admitted, that the power of one co-partner to bind another, is revocable. But it is said, this cannot be done, unless the creditor have knowledge of the co-partnership; that concealment of this, is a fraud. But *Gad Peck* was liable for this debt, by an original and express stipulation, in the knowledge and power of the plaintiffs, who, having consented to accept of an express collateral liability, which needed nothing but diligence to become effectual, in lieu of an original express liability, waived all right, not only to the express, but to the implied obligation of *Gad Peck.* " *Expressio unius, exclusio alterius.*"

New trial to be granted.