## CARGILL & OWEN vs. CORBY.

1. Private stipulations between partners do not effect the public, or those who deal with them, without notice of their agreement. The articles of co-partnership regulate the rights of the parties, as between themselves. If the business be to buy and sell, the individual partner buys and sells for the company. This is a general authority held out to the world, to which the world has a right to trust.

2. The general authority of one partner to draw bills or promissory notes to charge another, is only an implied authority, and may be rebutted by notice of the absence of such authority; and if a third person, having such notice, will take such a security, from one of the partners, he cannot sue the others upon it.

3. The fact that a firm dealt in buying goods and selling them to Indians, in the Indian territory, does not of itself limit the powers of the partners, or require any evidence of usage, or necessity in order to hold the partners liable on a partnership security.

## APPEAL from Buchanan Circuit Court.

### GARDENHIRE, for appellants.

1. The court erred in refusing the instructions asked by the appellants. Story on Partn. 158, secs. 102, 102 a; 3 Kent's Com: 40, 41, 42; 5 Black 210; Barrett vs. Swan 5 Shop. 180.

2. The court erred in giving the instructions asked by the respondent; Man vs. Lock 11, N. Hamp. R. 249; Gay vs. Bowen 8 Met. 100 Taunton Iron Co. vs. Richmond 8 Met. 434.

### LOAN & HAYDEN, for respondent.

1. The circuit court did not err in refusing to give the jury the first instruction asked by the plaintiffs, that notwithstanding said instruction may contain correct abstract principles of law, yet there being no evidence before the jury upon which to base the instruction, the court very properly refused to give it to the jury.

To the limited and special partnership proved to have existed between said Gingry and defendant the presumption of the right of one partner by his acts to bind the co-partnership that arises ordinarily on the proof of the existence of a partnership for commercial purposes does not attach, but in such a case to make one partner responsible for the act of his co-partner some evidence must be given tending to show that such act was necessary for the purpose of carrying on the business of the co-partnership or that it was usual for other companies engaged in the like business to do such acts, or to show some authority, other than the mere fact of being such partners, to do such act.

2. The court did not err in overruling the motion to give the 2d instruction asked by the plaintiffs for the reason that no evidence was given to the jury tending to prove that the note sued was executed for flour delivered to Corby & Co.

The court committed no error in giving to the jury as the law governing the case the instructions asked by the defendant. Because said instructions are based upon the evidence given in the cause and contain a correct exposition of the law governing the same: see Chitty on bills, late Ed. P. P. 46&48 and note on page 48; Lord Galway vs. Mathew & Smithson; Winshop and others vs. the Bank of the United States; 5 Peter's Reps. 529.

If the foregoing propositions be true it follows as a consequence that the plaintiffs motion to set aside the non-suit and for a new trial was properly overruled by the court.

The court will not reverse the judgment of the circuit court because,

1st. The plaintiffs have failed on the trial to prove the execution of the note sued.

2d. The evidence given on the trial of the cause in the circuit court tending to prove the execution of the note sued has not been preserved in the bill of exceptions.

3rd. The judgment is in accordance with equity and good conscience and is manifestly for the right party.

Although this transaction may have been purely of a partnership nature the defendant is not liable on the note sued on because the plaintiffs, prior to that date said note bears had been expressly notified by defendant that he would not be responsible for any contract that said Gingry might make for him: See Chitty on contracts on page 256, where it is said that the authority of one partner to bind the firm is only implied and no one can become the creditor of another against his express and declared will.

GAMBLE, J., delivered the opinion of the court.

Cargill and Owens composed a firm under the style of Cargill & Co. Corby was a member of a firm trading with the Indians and having a trading establishment at Bellevue in the Indian territory. His partner one Gingry, conducted the establishment; and the style of the firm was Corby & Co. Flour was one of the articles in which they dealt. Cargill & Co. sent flour up the Missouri river and at Bellevue, sold and delivered to Gingry about fifty barrels, for the price of which, they received an order drawn by Gingry upon Corby. This order was presented to Corby and he refused to pay it. Three witnesses testify as to the conversation between Corby and Owens at the time the order was presented, one says Corby told Owens "that Gingry had no right to bind him in any contract," another says Corby told Owens "that the drawer of the draft had no right to contract debts for him," the third says that Corby refused to pay the draft "because Gingry had no funds in his hands with which to pay it." The presentation of the order and the conversation between Corby and Owen occurred in October, 1850. The present suit is founded on a note made by Gingry, in the name of Corby & Co. in favor of Cargill & Co. and dated January 19th, 1851. This note was presented to Corby for payment in February, 1851, and on that occasion Corby refused to pay it, saying it was the same demand that had been previously presented.

At the trial, the court was asked by the plaintiffs to give the following instructions which were refused :

1st. If Corby and Gingry were partners at the time the note sued upon bears date and Gingry executed the note in the partnership name, the presumption is that the note related to the partnership and was on partnership account, and unless the defendant rebuts this presumption

Cargill & Owen vs. Corby.

by showing that the note did not relate to the partnership, and was not on partnership account they will find for the plaintiffs.

2d. If flour was an article in which Corby & Co. dealt at Bellevue, and plaintiffs delivered flour to Gingry there, for which the note sued on was executed they will find for the plaintiffs, unless the defendant has shown, that by a private arrangement between himself and Gingry the latter had no right to purchase on partnership account, and plaintiffs had notice of that fact, before the delivery of the flour.

The court at the request of the defendant gave the two following instructions:

1st. That if the jury believe from the evidence that defendant Corby notified plaintiffs or either of them that the said Gingry had no authority to bind him by any contract, and Gingry in fact had no authority, and afterwards the said plaintiffs took from the said J. A. Gingry the note sued on they will find for the defendant.

2d. That if the jury believe from the evidence, that the only partnership existing between Corby and Gingry was a partnership for the purpose of carrying on trade with the Indians in the Indian territory, they will find for the defendant, unless they further find from the evidence that it was necessary for the purpose of carrying on the business of said partnership, or usual for other companies trading with the Indians in the Indian country, to execute promissory notes.

The plaintiffs took a non-suit and having moved to set it aside, bring their case here by appeal.

The ground upon which Corby rested his defence in the circuit court, was, that his partner, Gingry, had no authority to bind him in any contract, and that the plaintiffs before they took the present note from him, were apprised of this limitation of his powers. The only evidence given of any restriction upon the general powers of Gingry as a partner to purchase goods is in the testimony of a witness, (Thomas Henry) who says "Corby was to buy and furnish the firm with goods, and Gingry was to sell or trade with the Indians, and that flour was a commodity in which the firm dealt."

If, by the terms of agreement between the partners, (Corby & Gingry) the latter had been expressly prohibited from purchasing any of the goods in the sale of which the trade was carried on, still a third person selling to him such merchandize upon credit, and receiving the paper of the firm without notice of any limitation of his powers as partner, may compel the payment of the debt as well from Corby as from Gingry. The private stipulations between partners do not effect the public, or those who deal with them without notice of their agreement. The doc-

---

Cargill & Owen vs. Corby.

---

trine on this subject is well stated by Chief Justice Marshall in Winship vs. The Bank of the United States, 5 Peters 561. He says "if the business be to buy and sell, then the individual (partner) buys and sells for the company and every person with whom he trades in the way of its business has a right to consider him as the company, whoever may compose it. It is usual to buy and sell on credit; and if it be so, the partner who purchases on credit in the name of the firm, must bind the firm. This is a general authority held out to the world, to which the world has a right to trust. The articles of co-partnership are perhaps never published. They are rarely, if ever, seen, except by the partners themselves. The stipulations they may contain, are to regulate the rights of the parties as between themselves. The trading world with whom the company is in perpetual intercourse cannot individually examine these articles, but must trust to the general powers contained in all partnerships. The acting partners are identified with the company, and have power to conduct its usual business in the usual way. This power is conferred by entering into the partnership, and is, perhaps, never, to be found in the articles. If it is to be restrained, fair dealing requires that the restriction should be made known. These stipulations may bind the partners, but ought not to effect those to whom they are unknown, and who trust to the general and well established commercial law."

As it was the business of the firm of Corby & Co. to buy and sell goods, and as flour was a commodity in which they dealt, there could be no doubt of the authority of the partner Gingry to purchase flour, or any of the articles in which their trade was carried on, and to purchase them upon credit and to give the note of the firm for the payment of the price; unless he was prohibited from purchasing or from giving notes by the articles of co-partnership; and if he had been so prohibited, a person dealing with him, and selling flour to him in ignorance of such prohibition, would still be entitled to enforce the note of the firm given upon such sale against all the partners. The question of Corby's liability; in this action is not upon the sale of flour made at Bellevue to Gingry, for the petition is not upon that cause of action; but upon the note subsequently given by Gingry; a note given after Corby, as some witnesses testify, had denied the power of Gingry to bind him in any contract and after the payees of the note were acquainted with the denial; Lord Ellenborough in Gallway vs. Mathew and Smithson, 10 East R. 264 says, "the general authority of one partner to draw bills or promissory notes to charge another, is only an implied authority; and that implication was rebutted in this instance by the notice given by

Smithson who is now sought to be charged, which reached the plaintiff warning him that Mathew had no such authority. It is not essential to a partnership, that one partner should have power to draw bills and notes in the partnership name to charge the others; they may stipulate between themselves that it shall not be done; and if a third person, having notice of this will take such a securiy, from one of the partners, he shall not sue the others upon it, in breach of such stipulation nor in defiance of a notice previously given to him by one of them, that he will not be liable for any bill or note signed by the other.

The first instruction given for the defendant in this case is founded upon the law as it was declared by Lord Ellenborough in the passage quoted and put the case fairly to the jury. If that instruction stood alone, the judgment of the circuit court would not be disturbed. But in the second instruction, the court directs the attention of the jury to a different question and misstates the law. The jury are told in this instruction, that if the only partnership between Corby & Gingry, was for the purpose of carrying on trade with the Indians in the Indian territory, they should find for the defendants unless they further find from the evidence that it was necessary for the purpose of carrying on that business, or usual for other companies trading with the Indians in the Indian country, to execute promissory notes. This instruction assumes that *prima facie* partners engaged in the Indian trade have not power to execute promissory notes and that the burden of showing the partners liable on such a note, is upon the holder, who is to show, either, that it was necessary to the conduct of the business or that other companies engaged in that trade made such notes. This is an incorrect statement of the law.

The trade with the Indians consists in buying goods and selling or bartering them to the Indians. The witness Henry testified in this case, that Corby was "to buy and furnish the firm with goods and that Gingry was to sell or trade with the Indians;" now if Corby in purchasing goods for the firm upon credit had given the note of the firm, it would be difficult to make a distinction between his right to bind his partner in such case and in a case where the goods were to be sold at a store in any town within the State. The fact that the firm dealt in buying goods and selling them to Indians in the Indian territory, does not of itself limit the powers of the partners, or require any evidence of usage or necessity in order to hold the partners liable on a partnership security. The judgment will be reversed and the cause remanded.