BANK OF BELLBUCKLE *v.* J. M. MASON *et al.*

(*Nashville*. December Term, 1917.)

1. **PARTNERSHIP.** Protest by partner.

At common law, or under Public Acts 1917, chapter 140, where one of two partners notifies a bank that he will not be bound for any overdrafts made by his partner, he is not liable therefor, regardless of where the money is applied, except that he is estopped as to a check drawn by his partner in his behalf, although he had no knowledge that it was an overdraft, because in paying overdrafts over protest, the bank will be held to be doing so solely on the credit of the other partner, and no contractual relation exists between the protesting partner, or the partnership, and the bank. (*Post, pp.* 662-668.)

Cases cited and approved: Johnston v. Dutton, 27 Ala., 245; Campbell & Jones v. Bowen, 49 Ga., 417; Johnson, Clark & Co. v. Bernheim, 76 N. C., 139; Johnston v. Bernheim, 86 N. C., 339; Yeager v. Wallace, 57 Pa., 365; Ellis v. Allen, 80 Ala., 515; Wilcox v. Jackson, 7 Colo., 521; Fertilizer Co. v. Pollock, 104 Ala., 402; Monroe v. Conner, 15 Me., 178; Leavitt v. Peck, 3 Conn., 124; Moffitt v. Roche, 92 Ind., 96; Cargill v. Corby, 15 Mo., 425; Matthews v. Dare, 20 Md., 248; Gallway v. Mathew et al., 10 East, 264; Union Bank v. Day, 59 Tenn., 413; Puckett v. Stokes, 61 Tenn., 443.

Cases cited and distinguished: Dawson v. Elrod, 105 Ky., 624; Matthews v. Dare, 20 Md., 248; Johnson v. Rankin, 59 S. W., 643; Foster v. Hall, 23 Tenn., 352.

2. **PARTNERSHIP.** Contracts. Protest of partner. Sufficiency of notice.

Notice by one of two partners to a bank that checks of his partner must not be paid unless there was money in the bank to the credit of the firm to meet them was sufficient to release such

partner from liability for overdrafts, although he did not in terms state that he would "not be bound;" it being sufficient if he conveyed clearly and unmistakably that he dissented; that he did not consent to his partner's making overdrafts, but was opposed to it.  (*Post, pp.* 668-678.)

Acts cited and construed:   Acts 1917, ch. 140.

Case cited and approved: Gallway v. Mathew, 10 East, 264.

FROM BEDFORD.

Appeal from the Chancery Court of Bedford County.—WALTER S. BEARDEN, Chancellor.

THOS. L. V. GREER and BATES & COOPER, for the Bank.

RIDLEY & RICHARDSON, for Hoover.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant sued the defendants as partners composing the firm of J. M. Mason & Co. to recover $5,505.57 overdraft, together with accrued interest, making the sum of $6,585.54.   A judgment was rendered for the latter sum.   Defendant Hoover appealed.

It appears that the defendants were partners in the mercantile business at Bellbuckle.   About October, 1912, they fell in debt to the bank by overdraft in the sum of about $3,000.   Hoover was the money-

ed man of the firm, but did not stay in the store or give any attention to the business, its conduct being confided wholly to Mason, in whom Hoover had the greatest confidence. When the knowledge of the overdraft was brought to the attention of Hoover, he promised to pay it off, but stated to the cashier, Shoffner, that it must never occur again; that Mason's checks must not be paid unless there should be money in the bank to the credit of the firm to meet them. During the next year the firm checks drawn by Mason were from time to time honored until there was an overdraft of the amount sued for. After that time, during the same year, Mason and Hoover dissolved partnership. Shoffner, the cashier of the bank, then brought the overdraft to Hoover's attention, and demanded payment. He refused to pay, and thereupon the present suit was brought. Hoover had no knowledge that the overdrafts were being made, or that his notice to Shoffner was in any respect being disregarded. However, it does appear that before the dissolution of the firm one check for $500 was drawn by Mason in the firm name in favor of Hoover, and the money paid to him. This was to pay what was supposed to be Hoover's profits that had accrued up to that time. Another check for $1,400 was paid to Hoover returning to him that sum of money which he had loaned to the firm. These two checks constituted a part of the overdraft sued for. Hoover did not know, at the time he received

the checks, that on their payment they caused any part of an overdraft.

The chancellor rendered a judgment in favor of the complainant bank against Hoover for the full amount of the overdraft, with interest thereon, in all $6,585.54, and he has appealed to this court.

The best statement of the rule governing the present controversy is found in 20 R. C. L., "Partnership," section 98, as follows:

"Third persons dealing with partners are not affected by private agreements between the partners of which they are not informed, but a partner, while remaining a member of a firm, may place limitations on the authority of his copartner to bind him either generally or as to particular transactions. When a partner gives to a third person notice that he will not be bound by the acts of his copartner, this amounts to notice that the implied agency has ceased, and such partner will then not be bound by the contract entered into by his copartner, although the fruits of the contract have been enjoyed by the partnership of which he is a member."

The authorities are all in accord on the first branch of the rule, and the weight of authority supports the second, to the effect that under the circumstances stated no liability will exist against either the dissenting partner or the firm itself, but only against the member making the contract, although the goods, or money, or other property, as the case may be, were used for the benefit of the firm. The reason is that the dissent of one member of a firm composed of

only two members (as to firms of three or more see *Johnston* v. *Dutton*, 27 Ala., 245), with notice to the person proposing to deal with or through the other member rebuts and destroys, for that transaction, the implied agency of the acting member, both as to the dissenting member and the firm. Under such a state of facts the person furnishing the goods or money can do so only on the individual credit of the member dealing with him. If one member of a firm buys goods on his own responsibility and places them in the stock of his firm, or procures money on his own credit, and with it pays the debts of the firm, that cannot raise, in favor of the person furnishing the goods or the money to the acting partner, an indebtedness against the firm, or against a dissenting partner, because of the want of privity between the person furnishing the money to the acting partner and the dissenting partner or the firm. It may raise an indebtedness in favor of the partner who so furnished the money or the goods, restricted in the case of goods, perhaps, to a mere *quantum meruit*, for which he would be entitled to credit on a settlement of tne business between his partner and himself; a similar credit for the sum used in the case of money used as stated. But it could not put the dissenting partner or the firm in a contractual relation with the person furnishing the goods or the money to the other partner. There are two cases (*Campbell & Jones* v. *Bowen*, 49 Ga., 417, and *Johnson, Clark & Co.* v. *Bernheim*, 76 N. C., 139; *Johnston* v. *Bernheim*,

86 N. C., 339) which seem to hold that, if the goods be put into the stock, and used by the firm notwithstanding the known dissent of one of the members, an indebtedness against the firm, and against each member, is created, despite the dissent. If this be a sound conclusion, then the right of dissent does not exist. A dissent by one partner which the other can overrule and set at naught is no dissent at all. The two cases cited, therefore, while conceding the right of dissent in form, deny it in substance and legal effect.

As already intimated, the great weight of authority is the other way. The following illustrations from the cases are deemed useful: Stone belonging to the firm was sold by one member over the protest of the other with knowledge thereof by the purchaser. The sale was held void. *Yeager* v. *Wallace,* 57 Pa., 365. One partner, over the known dissent of the other, made sale of the whole stock to one creditor, for debts owing to the latter by the firm. This sale was also held void. *Ellis* v. *Allen,* 80 Ala., 515, 519, 2 South., 676. A similar case is *Wilcox* v. *Jackson,* 7 Colo., 521, 4 Pac., 966. After one partner had given notice to the plaintiff not to supply any goods to the firm without his order or approval, it was held that he was not liable for goods supplied in defiance of such notice. *Fertilizer Co.* v. *Pollock,* 104 Ala., 402, 16 South., 138. In full accord is the case of *Dawson* v. *Elrod,* 105 Ky., 624, 49 S. W., 465, 88 Am. St. Rep., 321. In that case the court said:

"Likewise it seems clear that notice that the authority to bind did not exist in one partner would relieve from liability the other partner, just as after dissolution he is no longer bound. The partner selling or trading with one partner cannot bind the other partner after notice that he will not be bound. It is notice that the implied agency had ceased. Nor do we think this rule is changed by the fact that the goods came to the firm, and were used by the firm. This might have been the very thing that the appellee did not desire, and the very thing he undertook to guard against; yet, if the acts of his partner, against his wishes and over his protest, in receiving the goods and using them, can bind the appellee to pay for them, then notice to appellant might as well not have been given. The effect of the notice, if given, must be to place the seller on notice that, 'if you sell over my protest, in no event will I be bound.' "

Similarly in *Matthews* v. *Dare*, 20 Md., 248:

"The adventure may prove a losing one. It seems reasonable that, if a partner can limit the liability by giving notice that he will not be bound, then he can make his known liability absolute at least so far as not to be dependent on whether the thing contracted for comes to the use of the firm. If he cannot, he might as well have not dissented."

A very strong approval of the doctrine is found in *Monroe* v. *Conner*, 15 Me., 178, 32 Am. Dec., 148.

In *Leavitt* v. *Peck*, 3 Conn., 124, 8 Am. Dec., 157, it was held that, although a note was executed by one

of the partners in the name used by the partnership, for goods that had been furnished to the firm, the other partner was not bound on it, when he gave notice to the payee at the time that he would not be bound.

In *Moffitt* v. *Roche,* 92 Ind., 96, it was held that the note of a firm executed by one partner over the protest of the other, known to the payee, was not binding on the protesting partner. To the same effect is *Cargill* v. *Corby,* 15 Mo., 425. In *Matthews* v. *Dare,* 20 Md., 248, it was held that notice by one partner that he would not be bound for future notes or debts contracted by his partner would exonerate him, "unless the plaintiff could prove some act of adoption by him afterwards, or that he derived some benefit from the advance subsequently made to the firm."

Thus far the illustrations have dealt with goods furnished or notes executed. But in *Gallway* v. *Mathew et al.,* 10 East 264, wherein it appeared that one partner had executed a note and obtained money, the most of which he had applied to the partnership debts, over the dissent of the other, it was decided, the latter could not be held on the note. If money be borrowed or goods bought or any other contract be made by one partner upon his own exclusive credit, he alone is liable therefor, and the partnership, although the money, property, or other contract is for its proper use and benefit, or is applied thereto, will in no manner be liable therefor. Story on Partnership, pp. 211, 215.

On this special point our own cases are in perfect accord.

Thus in *Johnson* v. *Rankin* (Ch. App.), 79 S. W., 643: "As we have just pointed out, in a contest between the firm and a stranger, the question is not what use was made of the money, but whether it was advanced upon the faith of the partnership. If so advanced, and for a purpose within the scope of the partnership business, the firm is bound, although the money was not in fact appropriated to its use; and, on the other hand, if money was advanced on the individual credit of a member of the firm, its subsequent use for the benefit of the firm would not create an indebtedness against the firm. . . For the same reason it was improper for the chancellor in his directions to the master to make it the sole criterion of the liability of the partnership for the Walker . . . debt and the Brown . . . debt that the moneys derived from these sources were used in, or went to the benefit of, the partnership. The criterion is not the use of the funds for the benefit of the partnership, but their advance by the creditor upon the faith of the partnership business."

So, in *Foster* v. *Hall*, 4 Humph., 352, 353, it was said: "Nor will it make any difference in such a case that the money has not only been borrowed, but has been applied to partnership purposes."

Again on page 354 of 4 Humph., "Where money is borrowed for a firm, and the individual note, or bill of one partner only, is taken, that partner alone

will be responsible upon the note or bill; and in order to hold the firm liable for money advanced, it must appear that it was obtained for the firm, and on the credit of the firm; otherwise 'it will be treated as an election by the creditor to absolve the partnership from responsibility, and to confine the credit to that partner only.' ''

To the same effect are *Union Bank* v. *Day,* 12 Heisk. (59 Tenn.), 413, 414, and *Puckett* v. *Stokes,* 2 Baxt. (61 Tenn.), 443.

Therefore, if what was said in the conversation between defendant Hoover and the bank cashier, Shoffner, was equivalent to a notice by the former that he would not be bound for any future overdrafts made by his copartner Mason, then the bank in permitting such future drafts must be held to have advanced the money solely on the credit of Mason; and Hoover would not be responsible therefor to the bank, although such funds were applied to the payment of the partnership debts, unless there was some concurrent act, or subsequent act, on the part of Hoover showing an adoption of Mason's act, some personal participation in the fruits of it, distinguishable from the mere application of the proceeds to the debts of the firm.

We do not think it is essential that the dissenting partner shall in terms state "that he will not be bound." It is sufficient if he convey clearly and unmistakably to the person or persons proposing to deal with the other partner that he dissents; that he

does not consent to his partner's making the deal in question, but is opposed to it. This conveys notice to the party that the general implied agency of the other partner does not exist as to the matter; in short, that he has no authority from the dissenting partner to bind him in such matter. In Parsons on Partnership, section 84, it is said:

"If the act of the partner be forbidden by his copartner, and notice is given to the person with whom he deals, he no longer acts as his agent, and his act is only his own."

In Lindley on Partnership it is said:

"A person who has notice that the authority of a partner is restricted cannot hold the firm liable if he chooses to deal with that partner in a matter beyond his authority as restricted. Therefore, where the defendant, who was in a partnership, sent the plaintiff notice telling him not to supply goods to the firm without defendant's written order, and the plaintiff, notwithstanding, supplied goods to defendant's partner, it was held that the defendant was not liable." Id., vol. 1, section 170.

In *Yeager* v. *Wallace,* supra, *Ellis* v. *Allen,* supra, and *Wilcox* v. *Jackson,* supra, *Moffitt* v. *Roche,* supra, and *Cargill* v. *Corby,* supra, notice was given to the person dealing with the other partner singly, that the dissenting partner objected to the deal, was opposed to it, protested against it.

Did Hoover subsequently, or pending the creation of the debt representing the overdraft, do anything

whereby he was estopped on his former objection? Nineteen hundred dollars of the overdraft was paid to Hoover himself, on checks drawn by the firm in his favor. As to this sum, of course, he is estopped, and judgment must be rendered against him, with interest from the filing of the bill. He had no knowledge of the fact that his firm was at the time overdrawing its account; nor, indeed, had he such knowledge until about the time the present bill was filed, but, as he received the money personally, he must return it. He should not be held responsible, however, for the rest of the overdraft. This, after the notice given to the cashier, must be regarded as having been advanced wholly on the credit of the other partner Mason. Hoover had no knowledge of the matter at all.

It results that the decree of the chancellor must be modified in the particular just stated, reducing the amount of the decree to the amount stated, and in other respects reversed. The complainant will pay two-thirds of all of the costs of the cause, and the defendant Hoover one-third.

It is not improper to note that in the uniform partnership law, adopted by several of the States of our Union, and by our General Assembly of 1917 (Acts of 1917, chapter 140), the common law on the subject of the agency of partners *inter sese* was adopted, in substance, as we have stated it in the present opinion. Id., section 9. The hardship assumed to exist in the concurring opinion is met in section 18, subsec. ''b,''

of that act, just as the common law met it, and as we have indicated the common-law rule in the foregoing opinion.

MR. JUSTICE WILLIAMS, J. I concur in the result reached in the above opinion, and in all the argumentation that is necessary in the disposition of the cause; but the grounds of concurrence are stated in order to put on record the fact that I do not agree to the soundness of *Gallway* v. *Mathew,* 10 East, 264, and the fact that the court is not committed as to what would be the true rule applicable in a case where, after the protest of Hoover, the bank had honored a check creating an overdraft and the proceeds had been applied by Mason on debts of the firm, already in existence to the payment of which Hoover was at the time irrevocably bound. No implication of such committal of the court is to be drawn for the reason that we are all of opinion that the burden is upon complainant bank to show that such debts were paid, and the burden is not carried further than is indicated by the opinion of the Chief Justice. We have, therefore, no such case to decide.

My view is that, when such a case arises, the protesting partner should be held to respond under the doctrine of implied ratification. The true doctrine, as I conceive, lies midway between the rule in *Gallway* v. *Mathew,* and the doctrine declared by the Georgia and North Carolina courts, if indeed *Gallway* v. *Mathew* can be construed to treat of or disregard the doctrine of implied ratification in such circum-

stances.   It does not do so in terms; and since its date (1808) many rules of the common law have so far been affected by the ameliorating influence of equitable principles that it is well to pause and ask: Would Lord Ellenborough have pronounced the judgment he did, had that influence been more fully operative in his day?

It is entirely logical to hold, as was held in that and many later cases, that upon the lodgment of the protest the implied agency of Mason ceased.   But, notwithstanding, there may be a ratification on Hoover's part raised by the law out of the after-occurring facts touching the use of the funds.

I do not think this implication should be raised where the money so advanced by a third person, whether upon a note, bill of exchange, or check, is used in a way that augments, or tends to increase, the hazard of the protesting partner.   For example, where goods are purchased and received into the firm's stock of merchandise over one partner's protest, there should be no implication of ratification by him, since, with the benefit accruing in the *pro tanto* swelling of the firm's assets, there would be a concomitant hazard—that of an over-stocking which may bring or tend to bring the firm into difficulties which the protesting partner had a right to hedge against.   It seems that the doctrine of ratification is carried too far by the Georgia and North Carolina courts in such a case.

But what can be said against that doctrine when limited to cases where there is no semblance of an

Bank of Bellbuckle v. Mason.

increase of the burden or risk of the protesting partner? If Mason had used the proceeds of the overdraft to pay a debt of the firm to one who at the time could have pursued Hoover, the protesting partner, how was the latter injured. Assume that the overdraft was used to pay a judgment which was a lien on the firm's property; can it be conceived that Hoover did not take a benefit without any incidental burden or hazard? It would be grossly inequitable for him to retain that benefit without having imposed on him by law a ratification; cancellation of precedent agency authority in Mason being fully granted. Hoover's real *status* would not be changed; no sort of detriment to him would be worked, and substance would be lacking in any defense he might urge.

Hoover is held to respond to the bank; for so much of the overdraft as is represented by the firm's checks to him honored by it, or to the extent he participated as an individual in the benefits of the overdrafts, on this principle, albeit denominated an "estoppel." By parity of reasoning he should be held to answer to the extent of existing debts, which at the time were binding upon him, if satisfied by the overdrafts.

Since the proof only shows, in a general way, that the moneys or credits obtained by the overdrafts were used in the ordinary run of the firm's business, and does not affirmatively show that debts already created were discharged thereby, the bank must fail of recovery further than is stated in the opinion of the Chief Justice.

MR. JUSTICE FENTRESS, J., joins in this opinion.