# FIRST TENNESSEE PRODUCTION CREDIT ASSOCIATION, Plaintiff/Appellee,

v.

# Bill DAVIS, Defendant/Appellant.

Supreme Court of Tennessee, at Jackson.

March 28, 1988.

Joe H. Walker, III, Walker & Walker, Ripley, for defendant/appellant.

C. Craig Fitzhugh, Caldwell & Fitzhugh, Ripley, for plaintiff/appellee.

## OPINION

O'BRIEN, Justice.

This action originated in the Chancery Court for Lauderdale County as a suit by First Tennessee Production Credit Association on a series of promissory notes against the defendant Bill Davis. Davis filed a counter complaint against the plaintiff alleging that it was indebted to him. The Chancellor entered a judgment for Davis from which the Credit Association appealed. The Court of Appeals for the Western Section found the Chancellor in error, dismissed the cross-complaint, and awarded the Credit Association a judgment in the amount of $21,903.21. This Court concluded the ruling of the Court of Appeals was premised on the wrong basis and granted an appeal. We now reverse the judgment of that court and reinstate the judgment of the Chancery Court.

The chronology of events leading up to this litigation is simply stated. In 1977 the defendant Bill Davis entered into a formal written partnership agreement with his brother A.R. (Bob) Davis for the continuation of a farming operation they had been conducting for some years under the name of B & B Farms. Bob Davis was a professional farmer who, in a separate operation, was farming between 700 and 1,000 acres in row crops and produce, specifically tomatoes, principally on leased or rented land. The tomato farming was operated on a 173 acre farm owned by Bob Davis and his mother who had a one-third interest in the property. B & B Farms was engaged exclusively in tomato farming on the 173 acre tract. On 10 February 1977 B & B Farms borrowed $29,500 from the Production Credit Association on a demand note. On 19 June 1979 another note was signed for $14,740. Apparently some or all of this money was kept on deposit with the Credit Association and drawn upon by B & B Farms for partnership operations. On 1 May, 1981, after various withdrawals and credits on the B & B Farms account there was a balance of $31,740.87 due on the principal and accrued interest. On that date the individual debt of A.R. (Bob) Davis to the Credit Association was $175,000.

Production Credit called upon him for additional security and took a deed of trust for the one-third interest his mother owned in the 173 acre farm. They then granted him an additional line of credit which by June of 1981 totaled $286,000. Although there is some dispute in the evidence about the issue, there is no doubt that the Production Credit Association was fully cognizant that Bob Davis' farming enterprise and B & B Farms were two separate entities. The partnership agreement had been drafted by their attorney and a copy of it retained in their files since 1977. One of the withdrawals from Bob Davis' separate account in the sum of $10,000 had been applied, with their approval if not at their request, to defray the interest and a small amount of the principal on the B & B Farm account. In July 1981 when the tomato crop was coming in Bill Davis was in Indianapolis, Indiana, attending to the marketing of the tomatoes. Bob Davis was operating the farm and overseeing the gathering and shipping of the crop to the various markets. During this interval he received a number of checks made payable to the order of B & B Farms which he endorsed and turned over to the Production Credit Association. Five checks totaling $21,106.80 were credited to his individual account. Two of these were endorsed "B & B Farms by Bob Davis." The other three were signed by him "B & B Farms." During the same interval Bob Davis gave two checks drawn on the B & B Farms' account, totalling $18,000, which was applied on his separate account. Another check drawn to the order of "Bob Davis B & B Farms" in the sum of $2,194.50 was also applied to his individual account. There is no dispute about the application of these two sums. Subsequently an insurance check payable to B & B Farms in the amount of $8,475.71 was applied to the partnership debt with $1,000 going to interest and $7,475.71 applied on principal. In 1982 Bob Davis filed a petition in bankruptcy which was not settled until the end of 1983 when he was discharged in bankruptcy. In January 1984 two trucks were sold at auction for the sum of $11,950 and the proceeds applied to the B & B debt.

The Chancellor found that Bob Davis as an individual farmer and B & B Farms were separate entities which obtained loans from Production Credit Association and in March of 1981 the Association requested additional security from Bob Davis to avoid foreclosure. It was his view that Bill Davis was not responsible in any way for the Bob Davis bankruptcy and was not liable to Production Credit beyond his interest as a one-third partner in B & B Farms. He found that Bob Davis did not deliver any instructions to the Production Credit Association in reference to the application of the proceeds of the checks made payable to B & B Farms and that the association automatically and arbitrarily applied the proceeds of these checks in payment on the personal note of Bob Davis. He found that the various sums received by the plaintiff and applied to the B & B Farm account resulted in an overpayment to Production Credit Association of $9,791.64 which, with adjustments for interest, amounted to an excess of $9,999 and that Bill Davis was entitled to a refund of one-third of that amount.

We are of the opinion that the Chancellor reached the right result. We are satisfied with the calculations upon which he based his judgment for Bill Davis.

Based primarily on the foregoing facts the Court of Appeals ruled that allocation of payments by Production Credit Association was proper under the provisions of the Uniform Partnership Act, T.C.A. § 61–1–108(a), which reads as follows:

*Agency of partners.*—(a) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member, binds the partnership unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

It seems to us that if Bob Davis was acting as an agent of the partnership for the purpose of its business and endorsed the checks made payable to B & B Farms for the purpose of carrying on in the usual way the business of the partnership the Credit Association had no right to apply the proceeds of the checks to his individual account. It is conceded by the Production Credit Association that Bob Davis did not give any instruction to any of its representatives regarding the application of the proceeds of the checks made payable to B & B Farms.

The Court of Appeals also considered the provisions of T.C.A. § 47–3–110(1)(g) of the Uniform Commercial Code which defines an instrument payable to order and provides in the specified sub-paragraph that it may be payable to the order of a partnership ..., in which case it may be endorsed or transferred by any person thereto authorized. This too is a sound principle of law which is not applicable to the circumstances of this case since it merely defines an order instrument and sets out the manner in which it may be negotiated in the ordinary course of business.

The law governing the issue we are involved with here has been of record in the case reports since near the origin of Tennessee as a state and undoubtedly beyond. In *Jones' Case*, 1 Tenn. 455, 456 (1809) the Court held that a partner cannot charge his private debt to the firm without the consent of his partners. This rule has been followed in an unbroken succession of cases since that time. *Crouch v. Bowman*, 22 Tenn. 209, 212 (1842); *Foster v. Hall*, 23 Tenn. 346, 354 (1843); *Scott, Baker & Co. v. Bandy*, 39 Tenn. 198, 199 (1858); *Venable & Co. v. Levick, Brother & Co.*, 39 Tenn. 351 (1859); *Barcroft Beaver and Company v. Snodgrass*, 41 Tenn. 430, 436 (1860); *Union and Planters' Bank of Memphis v. Day*, 59 Tenn. 413, 414 (1872); *Gavin v. Walker*, 82 Tenn. 643, 645 (1885); *Rogers v. Betterton & Co.*, 93 Tenn. 630, 27 S.W. 1017 (1894); *Bank of Bellbuckle v. Mason*, 139 Tenn. 659, 666, 202 S.W. 931 (1917). The Uniform Partnership Act by Chapter 140 of the Acts of 1917 did not alter the rule stated in the foregoing cases, nor has any subsequent legislation or case law.

The judgment of the Court of Appeals against Bill Davis is set aside and reversed. The judgment in his favor in the Chancery Court is affirmed. Interest upon that sum is awarded him from and after the date of the filing of his cross-complaint against the plaintiff. The case is remanded to the trial court for enforcement of this judgment. Costs against the original plaintiff.

HARBISON, C.J., and COOPER and DROWOTA, JJ.

FONES, J., files separate concurring opinion.

FONES, Justice, concurring.

I concur in the result reached by the majority opinion. However, I do not agree that the statement that "a partner cannot charge his private debt to the firm without the consent of his partners," is the principle of law upon which this case should be decided.

There are very few words in the English language that have as many meanings as "charge." But in the context in which it is used in the majority opinion, it appears to mean the incurring of an obligation, at the time of origin of the transaction, such as a partner borrowing money or making a purchase on the credit of the partnership. Indeed, the cases cited in the majority opinion, with the exception of *Rogers v. Betterton & Co.*, 93 Tenn. 630, 27 S.W. 1017 (1894) and *Bank of Bellbuckle v. Mason*, 139 Tenn. 659, 202 S.W. 931 (1917) do not involve the application of partnership funds delivered to a creditor. Rather, they address the issue of whether money or credit initially advanced for the benefit of a partner, but charged to the partnership can be enforced as a partnership obligation.

Here, we are dealing with partnership funds delivered to a creditor of the partnership, who had a copy of the partnership agreement and knew that the checks represented partnership funds. The creditor, PCA, was also a creditor of the partner Bob Davis. PCA attempted to justify cred-

iting the partnership funds to the individual's debt on the theory that since no instructions were given as to the application of the partnership funds, PCA had the right to credit the funds to Bob Davis's personal debt.

*Rogers v. Betterton & Co., supra,* involved the application of partnership funds where the active partner who delivered the funds to the creditor was also indebted individually to the creditor and the payments were applied to the individual partner's account. In that case, prior to the formation of the partnership of Skipper & Rogers, Skipper had been in business dealing with Betterton & Co., and owed that company an individual debt. Skipper entered into partnership with Rogers and was the active member of the firm, although Rogers furnished most of the money. Betterton sued the partnership of Skipper & Rogers and obtained a judgment before a Justice of the Peace. Shortly thereafter Rogers discovered that two partnership checks had been delivered to Betterton & Co. that had not been credited to the partnership account. Cox, the Betterton bookkeeper, testified that Skipper had directed that the checks be applied to his antecedent account, but Skipper testified that he instructed Cox to credit the checks to the partnership account. On appeal, this Court did not find it necessary to resolve that factual conflict.

The Court's decision was premised upon the following principles of law:

> In the leading case of *Rogers & Sons v. Batchelor et als.,* it was held by the Supreme Court of the United States that one partner cannot apply the funds of the partnership to the discharge of his own separate pre-existing debts without the express or implied assent of the other partners, and it makes no difference, in such case, that the creditor did not at the time know that the fund was partnership property. 12 Peters, 221 [9 L.Ed. 1063 (1838)]. See also *Dobs* [*Dob*] *v. Halsey,* 16 Johns., 34.

> The general rule is, that one partner may not use the firm assets in payment of his individual debts, but if the co-part-

ner expressly or impliedly assent thereto, or afterwards ratify the act, the payment will be held good. *Everyhire* [*Everngh-im*] *v. Ensworth,* 7 Wend., 326; *Livingston* [*Levingston*] *v. Roosevelt,* 4 Johns., 251; *Liberty Savings Bank v. Campbell,* 75 Va., 534; *Hartley v. White,* 94 Pa.St., 31–36; *Allen v. Cary,* 33 La.Ann., 1455; *Forney v. Adams,* 74 Mo., 138; *Sligall v. Caney* [*Stegall v. Coney*], 49 Miss., 761; *Thomas v. Punich* [*Pennrich*], 28 Ohio St., 55, 60; *McNair v. Platt,* 46 Ill., 211; *Caldwell v. Scott,* 54 N.H., 414; *Filley v. Phelps,* 18 Conn., 294; *Burnwell* [*Burwell*] *v. Springfield,* 15 Ala., 273; *Norment v. Johnson* [*Johnston*], 10 Iredell, 89; *Carter v. Beaman,* 6 Jones, 44; *Conant v. Fray* [*Frary*], 49 Ind., 530. See also *Atkin v. Berry,* 1 Lea, 91.

> ....

> A large class of cases hold that, when the creditor has knowledge of the fact, expressly or impliedly, the burden is upon him to show that the partner had authority to use the firm's property to pay his private debts. *Davis v. Smith,* 27 Minn., 390 [7 N.W. 731]; *McNair v. Platt,* 46 Ill., 211. And the mere fact that the partner states that he has consent of his co-partner is not sufficient. *Allen v. Cary,* 3 La.Ann., 1455–1460.

93 Tenn. at 635–36, 27 S.W. 1017.

The Court concluded its opinion as follows:

> In the case at bar we have one partner, without the knowledge of his co-partner, applying the firm's money to the payment of his antecedent debt. The creditor knew that the funds being used were those of the firm of Skipper & Rogers, and not of Skipper, and he could not apply such funds to Skipper's individual, antecedent debt, except by the assent of the co-partner, Rogers. The money thus paid was improperly diverted from the firm's purposes to the individual partner's purposes, and complainant is entitled to have credit for the same as against the debt held by the firm of Betterton & Co. against Skipper & Rogers, and, the demurrer being out of his way, may have such credits applied in

this case, although after the judgment was rendered before the Justice of the Peace.

*Id.* at 637, 27 S.W. 1017.

In *Bank of Bellbuckle v. Mason, supra* the principles set out in *Rogers* were affirmed, in dicta, as the decision of the case rested upon another issue.

The facts in *Rogers* are indistinguishable from those in the instant case; the law therein has not been altered by this Court or the enactment of the Uniform Partnership Act; and the principles in *Rogers* control the disposition of this case.